Nancy Lee SMITH, Joshua Osborne, Jonathan Osborne, Thomas Osborne, Kevin McGinn, Erin McGinn, Connor McGinn, Rebecca McGinn, Dawn Hackett, Joseph Pecoraro, Linda Pecoraro and Michael Hurewitz, Plaintiffs,

v.

Joseph MITLOF, et al., Defendants.

No. 99 Civ. 10833(WCC).

United States District Court, S.D. New York.

Feb. 16, 2001.

Edward R. Petkevis, P.C., Edward R. Petkevis, of counsel, Roebling, NJ, for plaintiffs Nancy Lee Smith, Joshua Osborne, Jonathan Osborne, Thomas Osborne, Kevin McGinn, Erin McGinn, Connor McGinn, Rebecca McGinn, Dawn Hackett, Joseph Pecoraro and Linda Pecoraro.

Krieger & Wilansky, Wayne M. Wilansky, of counsel, Bronx, for Plaintiff Michael Hurewitz.

Joseph Mitlof, Nyack, NY, defendant pro se.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs Nancy Lee Smith, Joshua Osborne, Jonathan Osborne, Thomas Osborne, Kevin McGinn, Erin McGinn, Connor McGinn, Rebecca McGinn, Dawn Hackett, Joseph Pecoraro, Linda Pecoraro and Michael Hurewitz [1] bring this personal injury action against defendants Joseph Mitlof, individually and d/b/a: Hudson Valley Waterways, Tappan Zee Water Taxi and Tours, Tarrytown Water Taxi and Nyack Water Taxi; Daniel Sheehan, John Does 1–150, ABC Corporations 1–50 *in personam* and the M/V *Conservator*, her engines, tackle, etc. *in rem.* Plaintiffs, passengers aboard Mitlof's pontoon boat, *Conservator,* who were injured when it capsized, allege that the boat sank due to the negligence of Mitlof and Sheehan. Plaintiffs now move for partial summary judgment as to Mitlof's liability [2] pursuant to FED. R. CIV. P. 56. For the reasons stated below, plaintiffs' motion is granted.

## BACKGROUND [3]

Mitlof operated a charter and water taxi service on the Hudson River serving Tarrytown, Nyack and Pierpont, New York. On August 23, 1998, Mitlof's pontoon boat *Conservator* left Nyack allegedly carrying twenty-seven passengers—though Mitlof claims there were only twenty-five—and

---

1. Hurewitz, represented by a different attorney than the other plaintiffs, moved for the same relief under a different motion, but joins in the instant motion. (*See* Pls. Reply Mem. Supp. Summ. J. at 5.) Therefore, in the interest of judicial economy, the Court will consider both motions simultaneously.

2. Sheehan is currently in default and has submitted no testimony or motion papers in the instant action. Plaintiffs state that they will seek a default judgment against Sheehan if this motion is granted holding Mitlof liable. (*See* Pls. Mem. Supp. Summ. J. at 2 n. 2.)

3. The facts and prior proceedings of an action arising out of the same incident are set forth in this Court's December 15, 2000 Opinion and Order, familiarity with which is assumed. *See Hartford Fire Ins. Co. v. Mitlof,* 123 F.Supp.2d 762 (S.D.N.Y.2000). The facts are taken from plaintiffs' Rule 56.1 statement and Mitlof's Response to Plaintiffs' Rule 36 Request for Admissions, and are undisputed except where indicated.

two crewmen, including the boat's master, Sheehan, and capsized north of the Tappan Zee Bridge. All persons on board were sent into the water, and one passenger was trapped and drowned.

The Maritime Center at Norwalk ("Norwalk Maritime"), *Conservator*'s prior owner, had the boat certified by the United States Coast Guard ("USCG") to operate out of Norwalk, Connecticut and carry a maximum of twenty-one persons. Mitlof purchased *Conservator* from Norwalk Maritime in June 1998. Plaintiffs allege that Mitlof failed to obtain a new USCG certificate of inspection ("COI") after purchasing *Conservator*, and that he operated the boat without a valid COI, or, alternatively, that if there was a valid COI in effect, he violated its provisions. Mitlof claims that he received verbal assurance from the USCG that he would not need to have the vessel re-inspected and re-certified, but he never sought or secured this assurance in writing. The USCG investigated the accident, conducted a formal hearing on August 26 and 28, 1998, and issued two marine casualty reports. Mitlof and Sheehan invoked their Fifth Amendment privilege against self-incrimination and refused to testify at the hearing.

## DISCUSSION

Plaintiffs now move for summary judgment pursuant to FED. R. CIV. P. 56. They invoke the *Pennsylvania* Rule, *see The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1873), arguing that because Mitlof violated a navigation law statute, he bears the burden of proving not only that his violation did not cause or contribute to the casualty, but that his violation *could not have* caused or contributed to the casualty. *See id.* 86 U.S. at 136. Mitlof, appearing pro se, contends that *Conservator* in fact possessed a valid COI on August 23, 1998. Alternatively, he argues that Sheehan was an independent contractor who violated Hudson Valley Waterways's company policies by overloading *Conserva-*

*tor*, and that because Mitlof was not in physical control of the boat when Sheehan did this, Sheehan's actions release him from liability. Plaintiffs counter that Mitlof is liable for Sheehan's actions under *respondeat superior*. For the reasons stated hereinafter, plaintiffs' motion is granted.

### I. *Summary Judgment Standard*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether summary judgment is appropriate, the court should resolve all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide genuine issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994). Summary judgment may not be granted simply because the court believes the nonmovant will not be able to meet the burden of persuasion at trial. *Danzer v. Norden Sys.*, 151 F.3d 50, 54 (2d Cir.1998).

## II. *Statutory Violations*

■ Although the *Pennsylvania* Rule arose out of a vessel collision case, it is not limited to that type of case, and has been applied to other maritime actions. *See, e.g., Kernan v. American Dredging Co.,* 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958) (fire on a tug caused by open-flame kerosene lamp carried on scow in statutory violation); *In re Seaboard Shipping Corp.,* 449 F.2d 132, 136 (2d Cir.1971), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2038, 32 L.Ed.2d 337 (1972) (seaman drowned in tug-tow case where cargo overloading and improper lifeboat storage were statutory violations); *Petition of Long,* 439 F.2d 109 (2d Cir.1971) (cargo overloading in Load Line Act case was statutory violation); *see also Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.,* 972 F.2d 426, 436 (1st Cir.1992) ("Given the policy underlying the rule, that is to assure strict compliance with rules pertaining to the safe operation of ships, we see no reason why the rule should not apply to the capsizing and sinking of a vessel."); *Savoie v. McCall's Boat Rentals, Inc.,* 491 So.2d 94 (La.App.Ct.1986) (electrical technician injured being transported by personnel basket from vessel to dock where lack of minimum crew members violated USCG regulations). Because Mitlof's actions allegedly violated both federal navigation statutes and USCG regulations, we agree with plaintiffs that the *Pennsylvania* Rule should apply in this case. However, to shift to Mitlof the burden of proof on the issue of causation, plaintiffs must prove that he violated some navigational statute or USCG regulation.

■ Plaintiffs claim that Mitlof operated *Conservator* either without a valid COI or, if he had a valid COI, in violation of its terms. All "small passenger vessels" are subject to inspection pursuant to 46 U.S.C. § 3301(8). *Conservator* qualifies as a "small passenger vessel" under 46 U.S.C. § 2101(35)(A) because it is "less than 100 gross tons" and "[carries] more than 6 passengers, including at least one for hire." As such, it is controlled by 46 C.F.R., Chap. I, Subchap. T (§ 176.100 *et seq.*). 46 C.F.R. § 176.100(b) states that "each vessel inspected and certified under the provisions of this subchapter must, when any passengers are aboard during the tenure of the certificate, be in full compliance with the terms of the certificate."

Mitlof contends that the last COI issued was valid through May 2000 (*see* Def. Mem. Opp. Summ. J., Ex. G) and that "[t]here is no automatic 'revocation' or 'deactivation' upon sale of a currently certified vessel." (*Id.* at 4.). Under 46 C.F.R. § 176.107(c), a COI "may be suspended or withdrawn by the cognizant [USCG inspector] at any time for noncompliance with the requirements of this subchapter." Moreover, the USCG may require a vessel to be re-inspected and may issue an "amended COI" that extends the initial COI after changes in, among other things, vessel ownership. *See* 46 C.F.R. § 176.120. As previously noted, Mitlof did not have *Conservator* re-inspected after purchasing it from Norwalk Maritime.

Mitlof argues that he called the USCG's New York district and spoke to Gary Gaugler, who informed him that the USCG would not be re-inspecting any "currently certified" vessels coming into the area. He submits a copy of a request Mr. Gaugler made to the USCG's Philadelphia district inquiring about the files on two boats, *Lenape Seal* and *Aaron Burr,* both of which are also owned by Mitlof. (*See* Def. Mem. Opp. Summ. J., Ex. H.) Both Mitlof's and Gaugler's actions are consistent with 46 C.F.R. § 176.120, which provides for permissive instead of mandatory re-inspections. However, Gaugler's request nowhere mentions *Conservator.* (*See* Def. Mem. Opp. Summ. J., Ex. H.) Mitlof also claims that he notified the USCG's Hartford district "as a courtesy," and offers copies of his phone records as evidence thereof. (*See id.* at 4, Ex. I.) However, these records do not indicate to whom the calls were made or for what purpose.

Although Mitlof may have contacted the USCG about his other boats, he has presented no convincing evidence that he sought to have *Conservator* inspected and certified after purchasing it from Norwalk Maritime. However, plaintiffs only offer facts from the USCG's marine casualty reports to prove that the USCG's Hartford district revoked the initial COI. Such a report, and anything contained therein, is statutorily inadmissible in a civil action. *See* 46 U.S.C.A. 6308(a); *Eckstein Marine Serv., Inc. v. Crescent Marine Towing, Inc.*, No. Civ. A. 98–1467, 1999 WL 58264 (E.D.La. Feb.2, 1999). Therefore, whether *Conservator*'s COI was valid on August 23, 1998 is a triable issue of fact.

Nonetheless, even assuming *arguendo* that there was a valid COI in effect, Mitlof violated it. The COI allowed a maximum of twenty-one passengers, including crew, and it limited *Conservator*'s route to the "Norwalk Connecticut harbor area, not more than (1) mile from shore, on voyages not to exceed thirty (30) minutes in duration." (*See* Def. Mem. Opp. Summ. J., Ex. G.) These limitations comply with 46 C.F.R. §§ 176.103 (general requirements) and 176.110 (routes permitted). Mitlof admits that *Conservator* was carrying at least twenty-five passengers, plus two crewmen, on August 23, 1998. This violated 46 C.F.R. §§ 176.103 and 176.113(a), which states:

> The maximum number of passengers permitted must not be more than that allowed by this section, except as authorized by the [inspector] under paragraph (d) of this section.
>
> . . . . .
>
> (d) For a vessel operating on short runs on protected waters such as a ferry, the cognizant [inspector] may give special consideration to increases in passenger allowances.

Because Mitlof operated *Conservator* as a charter for hire as well as a water taxi, it did not qualify as a "ferry," but rather as a "recreational vessel" under 46 U.S.C. § 2101(25)(B). Moreover, the accident oc-

curred near the Tappan Zee Bridge, well outside its specified route—the Norwalk, Connecticut harbor area—which violated 46 C.F.R. §§ 176.103 and 176.110. Thus, Mitlof violated the COI even if it was still in effect.

This violation of maritime statutes and regulations, under the *Pennsylvania* Rule, imposes upon Mitlof the burden of proving that operating *Conservator* either outside its permitted area or in excess of its stated maximum passenger capacity "could not have been" one of the causes of its capsizing. However, instead of attempting to meet the heavy burden imposed on him by the *Pennsylvania* Rule, Mitlof argues that *Conservator*'s master, Sheehan, was solely responsible for the accident.

### III.  *Negligence*

■■■ Because the accident occurred on intrastate navigable waters, this Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333. "With admiralty jurisdiction comes the application of substantive admiralty law." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). "The common law rules of negligence apply in admiralty law." *Diesel Tanker Ira S. Bushey, Inc. v. Tug Bruce A. McAllister*, No. 92 Civ. 5559, 1994 WL 320328, at *6 (S.D.N.Y. June 29, 1994). Thus, a master's negligence may be imputed to the owner. *See Leathers v. Blessing*, 105 U.S. 626, 629–30, 26 L.Ed. 1192 (1881) ("[T]he relation of the master and of his co-owner, through him, to the libellant, [is] such as to create a duty on them to see that the libellant [is] not injured by the negligence of the master.").

Mitlof argues that Sheehan was a "per diem, independent contractor." (Def. Mem. Opp. Summ. J. at 3.) As evidence, he submits a copy of a USCG operator license dated January 5, 1995. (*Id.*, Ex. F.) However, the names of both the licensed operator and the licensing USCG lieutenant have been completely redacted. It is thus

impossible for this Court to determine to whom the license was granted. Even assuming it was issued to Sheehan, it would have no bearing whatever on Sheehan's relationship to Mitlof or Hudson Valley Waterways. Mitlof also claims that Sheehan was solely responsible for any passenger overloading that occurred, in violation of "strict company policy" regarding passenger capacity. (*Id.* at 3.) As evidence, he submits a copy of the Hudson Valley Waterways "guidelines" for operating water taxis in cooperation with "Rivercrest," dated June 1, 1998. Item 3, which has been highlighted, reads:

> The maximum number of passengers at one time will be twenty and at no time will more than five persons be allowed on the floating dock. Every effort will be given to those passengers needing assistance. Our staff will be briefed regarding these contingencies before each tour.

(*Id.*, Ex. E.)

This guideline does not absolve the shipowner of liability. The Second Circuit has ruled that "a ship owner owes to all passengers aboard its ship the duty of exercising reasonable care under the circumstances of each case." *York v. Commodore Cruise Line, Ltd.,* 863 F.Supp. 159, 161 (S.D.N.Y.1994) (Conner, J.) (citing *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63, 64–66 (2d Cir.1988)). Moreover, "[t]he extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case." *Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169, 172 (2d Cir.1983). Of course, "[t]here must be some failure to exercise due care before liability may be imposed." *Monteleone,* 838 F.2d at 65.

▪ In the instant case, Mitlof has not shown the existence of an issue of fact as to whether he exercised reasonable care in providing a safe vessel. All the available evidence tends strongly to show that he did not. On the night before the accident, *Conservator* began taking on water while carrying only ten passengers (*see* Def. Resp. to Pls. Req. for Admis. at 10), less than half as many as it carried on August 23, 1998. Thus, Mitlof knew or should have known that his boat could not safely carry the larger loads that it frequently was asked to transport.

Had Mitlof followed the statutory guidelines for small passenger vessels set out in 46 C.F.R. § 176.100 *et seq.,* he would have had *Conservator* inspected, and the USCG might have discovered its potentially fatal unsuitability for its intended use. Instead, Mitlof not only improperly relied on a prior certification of the vessel, but exceeded its express limitations. His lack of care exposed the passengers to an intolerable risk, even before Sheehan's actions came into play. Thus Mitlof cannot sustain his burden of showing that his statutory violations could not have caused the accident. We therefore rule as a matter of law that Mitlof is liable for the consequences of the capsizing of the *Conservator,* whether or not the master's negligence aggravated the hazard.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment as to Mitlof's liability is granted. Both parties are directed to appear before the Court at a pretrial conference at 9 a.m. on Friday, March 9, 2001, to schedule an inquest to determine the amount of damages.

SO ORDERED.