**Nancy Lee SMITH, individually and on her own behalf and on behalf of: Joshua Osborne, Jonathan Osborne and Thomas Osborne, minors by their parent and guardian Nancy Lee Smith, Kevin McGinn, individually and on his own behalf and on behalf**

of: Erin McGinn, Connor McGinn and Rebecca McGinn, minors by their parent and guardian Kevin McGinn, Dawn Hackett, Joseph Pecoraro, Linda Pecoraro and Michael Hurewitz, Plaintiffs,

v.

Joseph MITLOF, et al.,
Defendants/Third–
Party Plaintiff,

v.

The Maritime Aquarium at Norwalk, Inc., Third–Party Defendant.

Susan Thorson, William L. Thorson, Denny Jacobson, Eleanor Budoff, Helen Gurvitch, John L. Russo and Francis O'Brien, Plaintiffs,

v.

The Maritime Aquarium at Norwalk, Inc., et al., Defendants.

Nos. 99 CIV 10833(WCC),
01 CIV. 7880(WCC).

United States District Court,
S.D. New York.

April 17, 2002.

**496**

Edward R. Petkevis, P.C., Attorneys for Plaintiffs Nancy Lee Smith, Joshua Osborne, Jonathan Osborne, Thomas Osborne, Kevin McGinn, Erin McGinn, Connor McGinn, Rebecca McGinn, Dawn Hackett, Joseph Pecoraro, Linda Pecoraro and Michael Hurewitz, Roebling, NJ, Edward R. Petkevis, Esq., Of Counsel.

Tierney, Zullo, Flaherty and Murphy, P.C., Previous Attorneys for Third–Party Defendant/Defendant The Maritime Aquarium at Norwalk, Inc., Norwalk, CT, Barbara L. Coughlan, Esq., Of Counsel.

Pisano Mills & Isgard LLP, Current Attorneys for Third–Party Defendant/Defendant The Maritime Aquarium at Norwalk, Inc., New York, Phyllis Wrann, Esq., Of Counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

The instant opinion involves two related actions brought by passengers who suffered injuries when the pontoon boat *Conservator* capsized on August 23, 1998. In the first action, plaintiffs Nancy Lee Smith, Joshua Osborne, Jonathan Osborne, Thomas Osborne, Kevin McGinn, Erin McGinn, Connor McGinn, Rebecca McGinn, Dawn Hackett, Joseph Pecoraro, Linda Pecoraro and Michael Hurewitz (collectively the "Smith plaintiffs") amended the original Complaint in their personal injury action (the "Smith action") to include as a defendant[1] the Maritime Aquarium at Norwalk, Inc. ("Norwalk Maritime"). In the second action, plaintiffs Susan Thorson, William L. Thorson, Denny Jacobson, Eleanor Budoff, Helen Gurvitch, John L. Russo and Francis O'Brien (collectively the "Thorson plaintiffs") bring a related personal injury action (the "Thorson action") naming, among others,[2] Norwalk Maritime[3] as a defendant. Norwalk Maritime now moves to dismiss the

---

1. The other defendants named in the Smith action are Joseph Mitlof, individually and d/b/a: Hudson Valley Waterways, Tappan Zee Water Taxi and Tours, Tarrytown Water Taxi and Nyack Water Taxi; Daniel Sheehan; the M/V Conservator, her engines, tackle, etc., *in rem;* Precision Marine Surveyors, LLC; Richard J. Ciesluk, Sr.; Sea & Air Products; Sea–Air, Inc.; Milton T. Ferguson, Jr.; John Wisner and/or Connecticut Fireboat; John Does: 1–150 and ABC Corps.: 1–50 *in personam.*

2. The other defendants named in the Thorson action are Connecticut Fireboat, John Wisner, Precision Marine Surveyors, LLC, Richard J. Ciesluk, Sr., Sea & Air Products, Sea–Air,

Inc., Milton T. Ferguson, Jr., John Does: 1–150 and ABC Corps.: 1–150 *in personam.*

3. Both the Amended Complaint in the Smith action and the Complaint in the Thorson action originally named Jack Schneider, Jay Louden, Jerry Sawyer, Michael Pinto and J. Peter Marnane; all present or past employees of Norwalk Maritime. However, by stipulation dated February 20, 2002, Norwalk Maritime withdrew its claim of lack of personal jurisdiction in exchange for plaintiffs withdrawing their claims against the individuals named above, without prejudice to refiling should discovery disclose that Norwalk Maritime lacks insurance coverage.

claims brought against it in both the Smith and Thorson actions pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). For the reasons that follow, Norwalk Maritime's motion is granted in part and denied in part.

## BACKGROUND[4]

Joseph Mitlof purchased the pontoon boat *Conservator* in 1998 from Norwalk Maritime. (Smith Complt. ¶ 148.) Norwalk Maritime had obtained the *Conservator* in 1990 through a donation from the vessel's prior owner, Saugatuck Valley Audubon Society. *Smith II,* 148 F.Supp.2d at 282. In its endeavor to sell the *Conservator,* Norwalk Maritime publicly advertised that the vessel was in excellent condition with a valid Coast Guard certificate of inspection ("COI"). (*Id.* ¶ 147.) However, plaintiffs allege that, contrary to this representation, Norwalk Maritime was aware that the *Conservator* was dangerous and non-compliant with the Code of Federal Regulations, including regulations regarding stability and hull integrity. (*Id.* ¶ 150.) On at least two prior occasions during Norwalk Maritime's ownership of the *Conservator,* the vessel, due to structural defects, experienced problems so severe that passengers needed to be rescued. (*Id.* ¶ 160.) This information was not disclosed to Mitlof when he purchased the *Conserva-*

tor. (*Id.* ¶¶ 152–53.) Furthermore, Norwalk Maritime was aware that the COI for the *Conservator* was limited and conditioned on use in restricted waters which did not include the area of the Hudson River where Mitlof planned to use it. Although Mitlof had stated his intent to carry passengers on waters not covered by the COI, Norwalk Maritime allegedly failed to inform him of the restriction. (*Id.* ¶¶ 149–50.)

While carrying passengers on August 23, 1998, the *Conservator* capsized on the Hudson River north of the Tappan Zee Bridge causing serious injuries to all plaintiffs. (Thorson Complt. ¶ 26; Smith Complt. ¶ 56.) Plaintiffs[5] allege that the wrongful acts of Norwalk Maritime, including negligent misrepresentation, fraud, breach of contract, breach of express and implied warranties and negligent repair and maintenance, proximately caused their injuries.[6]

## DISCUSSION

### I. *Standard on Motion to Dismiss*

■■■ On a motion to dismiss, the Court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to plaintiffs. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94

---

4. The facts and prior proceedings underlying these actions are set forth in this Court's February 16 and June 20, 2001 Opinions and Orders in the Smith action, with which familiarity is assumed. *See Smith v. Mitlof,* 130 F.Supp.2d 578 (S.D.N.Y.2001) [hereinafter *Smith I*]; *see also Smith v. Mitlof,* 148 F.Supp.2d 279 (S.D.N.Y.2001) [hereinafter *Smith II*]. This Court takes judicial notice of those opinions pursuant to FED. R. EVID. 201. The facts relevant to the instant motions are taken from both the Amended Complaint in the Smith action ("Smith Am. Complt.") and the Complaint in the Thorson action. ("Thorson Complt.") The allegations in these pleadings with respect to Norwalk Maritime are essentially identical.

5. Reference to the Thorson and Smith plaintiffs collectively as "plaintiffs" indicates that both sets of plaintiffs advanced identical claims or allegations.

6. In *Smith II,* this Court denied Norwalk Maritime's motion for summary judgment with respect to Mitlof's claims of fraudulent misrepresentation and breach of express and implied warranties. However, because that opinion involved the direct purchaser of the *Conservator* rather than prospective passengers, a different analysis applies to the instant claims.

S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.,* 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.). On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (*quoting Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. New York State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978). In addition, "when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Financial Serv. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998).

**7.** 28 U.S.C. § 1333(1) states, in relevant part: "[t]he district courts shall have original jurisdiction ... of any civil case of admiralty or maritime jurisdiction."

**8.** Although the Thorson Complaint claims only diversity as the basis of jurisdiction, (Thorson Complt. ¶ 1), the Thorson plaintiffs

## II. *Admiralty Jurisdiction*

Plaintiffs maintain that their claims are brought pursuant to this Court's admiralty jurisdiction over both maritime contracts and maritime torts, 28 U.S.C. § 1333(1),[7] as well as this Court's supplemental jurisdiction, 28 U.S.C. § 1367(a).[8] Norwalk Maritime, on the other hand, argues that the claims brought against them do not fall under the admiralty jurisdiction of this Court and that the Smith plaintiffs' claims should thus be dismissed under FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.

### A. *Admiralty Contract Jurisdiction*

■■■■ In determining whether a contract falls under the federal courts' admiralty jurisdiction, "the nature and subject matter of the contract at issue is the crucial consideration." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 109 (2d Cir.1997) (quoting *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 611, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991)) (internal quotations omitted). A contract is considered maritime if it "relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment." *Sundance Cruises Corp., SCI v. American Bureau of Shipping,* 7 F.3d 1077, 1080 (2d Cir.1993) (citations and quotation omitted). According to the general rule governing admiralty jurisdiction in a contract case, "admiralty jurisdiction arises only when

argue in their opposition to Norwalk Maritime's Motion to Dismiss that admiralty jurisdiction should apply. (Thorson Pls. Mem. Opp. Mot. Dismiss at 3–11.) We therefore treat the Thorson Complaint as having asserted jurisdiction under both diversity and admiralty.

the subject-matter of the contract is 'purely' or 'wholly' maritime in nature." *Transatlantic Marine*, 109 F.3d at 109. Thus "mixed" contracts, involving both sea and land obligations, do not generally fall under admiralty jurisdiction. *Hartford Fire Ins. v. Orient Overseas Containers Lines Ltd.*, 230 F.3d 549, 555 (2d Cir.2000). However, the Second Circuit has held that a federal court can exercise jurisdiction over a "mixed" contract under either of two conditions: (1) the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract; or (2) the land-based portion of the contract is "merely incidental" to the sea-based portion. *Id.; see also Transatlantic Marine*, 109 F.3d at 109.

▇▇▇ For almost a century, it has been "elementary hornbook law" that a contract for the sale of a vessel does not come within the federal courts' admiralty jurisdiction. *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 675 F.Supp. 146, 150 (S.D.N.Y.1987) (citing cases and treatises); *see also The Ada*, 250 F. 194, 198 (2d Cir.1918) (Rogers, J., concurring) ("The rule is settled that contracts for building a ship, or contracts for selling a ship, are not maritime contracts . . . ."). Plaintiffs concede as much. However, plaintiffs argue that Norwalk Maritime's representation that the vessel had a COI "for the carriage of 20+1 persons"[9] brings that portion of the contract within this Court's admiralty jurisdiction. According to plaintiffs' reasoning, this statement involves "the fitment of [the] vessel for navigation" which, under Second Circuit precedent, constitutes a maritime contract. *See Sundance Cruises*, 7 F.3d at 1080. Plaintiffs argument is flawed. Norwalk Maritime's statement on which plaintiffs rely, even if found to have been integrated into the contract to sell the *Conservator*, relates to only one aspect of the contract for sale. As explained above, a "mixed" contract does not generally come within admiralty jurisdiction unless the maritime portion is severable from the rest of the contract or the non-maritime aspects of the contract are merely incidental. Clearly, neither of these conditions is met with respect to the instant contract which is unequivocally one for the sale of a vessel. Therefore, plaintiffs' breach of contract claims against Norwalk Maritime do not come within this Court's admiralty contract jurisdiction. In addition, although claims sounding in breach of express and implied warranties have been recognized in admiralty, *see, e.g., Seguros Illimani S.A. v. M/V Popi P*, 929 F.2d 89 (2d Cir.1991), plaintiffs' breach of warranty claims arise out of a non-maritime contract and are thus not subject to admiralty jurisdiction. *See East River Steamship Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 872 n. 7, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (no admiralty jurisdiction for breach of warranty actions grounded in non-maritime contract); *Norvel Ltd. v. Ulstein Propeller AS*, 161 F.Supp.2d 190, 198 (S.D.N.Y.2001).[10] Because the contract at issue in these actions is non-maritime, admiralty contract juris-

---

**9.** This fact is not alleged in the instant pleadings, but is gleaned from this Court's opinion in *Smith II*, 148 F.Supp.2d at 286, of which we have taken judicial notice. *See infra* note 4.

**10.** Although plaintiffs plead their breach of warranty claims under contract law, *see infra* Part III.E., to the extent that plaintiffs suggest that their breach of warranty claims are premised on a theory of strict tort liability rather than contract, strict liability does not apply to Norwalk Maritime's alleged conduct. *See infra* Part III.A.

diction is inapplicable to plaintiffs' contract claims.

### B. *Admiralty Tort Jurisdiction*

 In addition to arguing for the application of admiralty contract jurisdiction, plaintiffs maintain that their tort claims against Norwalk Maritime are subject to admiralty tort jurisdiction. "Admiralty tort jurisdiction is determined quite differently from admiralty contract jurisdiction." *Sirius Ins. Co. (UK) Ltd. v. Collins,* 16 F.3d 34 (2d Cir.1994). In order to qualify as a maritime tort, two conditions must be met: (1) the wrong must take place on navigable waters ("situs requirement"); and (2) it must bear a significant relationship to traditional maritime activity ("status requirement"). *Keene Corp. v. United States,* 700 F.2d 836, 843 (2d Cir.1983) (quoting *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 254–61, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972)).

 Norwalk Maritime argues that plaintiffs' claims fail to satisfy the situs requirement for admiralty tort jurisdiction. According to Norwalk Maritime, none of the alleged wrongful acts took place on navigable waters. (Def. Reply Mem. Supp. Mot. Dismiss at 5.) We agree with Norwalk Maritime insofar as this argument applies to the torts of fraud and negligent misrepresentation. These alleged torts, arising out of representations made by Norwalk Maritime in the sale of the *Conservator* to Mitlof, took place on land where the contract was consummated. Plaintiffs' contention that torts such as these fall under admiralty jurisdiction if the "effects" of the tort are felt on navigable water is unpersuasive.[11] (Smith Pls. Mem. Opp. Mot. Dismiss at 8–9.)[12] Rather, in determining whether the situs requirement is satisfied, the Court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). Neither condition is satisfied here. Therefore, admiralty tort jurisdiction does not apply to these claims.

 Plaintiffs' claims of negligent repair and maintenance, however, do meet the situs requirement for admiralty tort jurisdiction. The injuries arising out of the *Conservator*'s alleged defects occurred on navigable waters. *See In re Horizon Cruises Litig.,* 101 F.Supp.2d 204 (S.D.N.Y.2000) (injuries occurring at sea as a result of defective products fall under admiralty jurisdiction). Furthermore, plaintiffs' claims in this respect clearly satisfy the requisite maritime nexus because the plaintiffs were injured on a vessel engaged in maritime commerce. *See East River Steamship Corp.,* 476 U.S. at 864,

---

**11.** In support of this argument, plaintiffs cite *Maritima Petroleo E Engenharia LTDA v. Ocean Rig 1 AS,* 78 F.Supp.2d 162, 171–72 (S.D.N.Y.1999), where the court explained that torts must have an "effect on navigable waters" to come within admiralty jurisdiction. However, the *Maritima Petroleo* court also rejected the notion that alleged torts of misrepresentation and inducement to contract had any "effect" on navigable waters. Instead, the court explained that "any misrepresentations which occurred most certainly occurred on land where the parties executed the [contract]." *Id.* at 171.

**12.** The memoranda submitted by the Smith and Thorson plaintiffs in opposition to Norwalk Maritime's motion to dismiss are essentially identical. For convenience, page references will only be to the Smith plaintiffs' memorandum. In addition, we will cite defendant's memoranda in support of the instant motions and their reply memoranda by reference to the memoranda involved in the Smith action.

106 S.Ct. 2295 (maritime nexus requirement met when injury occurs on ship engaged in maritime commerce). We thus conclude that only plaintiffs' claims of negligent repair or maintenance, with a corresponding claim of failure to warn of the vessel's dangerous conditions,[13] come within this Court's admiralty tort jurisdiction. Because plaintiffs' additional claims form part of the same "case or controversy" as plaintiffs' admiralty claims, 28 U.S.C. § 1367(a) grants this Court supplemental jurisdiction over plaintiffs' remaining claims.[14] Norwalk Maritime's motion to dismiss the Smith Amended Complaint for lack of subject matter jurisdiction is thus denied.

### C. Choice of Law

Plaintiffs' claims of negligent repair and maintenance, which come within this Court's admiralty jurisdiction, are governed by federal maritime law. "With admiralty jurisdiction comes the application of substantive admiralty law." *East River Steamship Corp.*, 476 U.S. at 864, 106 S.Ct. 2295. "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Id.* at 864–65, 106 S.Ct. 2295. State law, however, governs plaintiffs' non-maritime claims. *See, e.g., In re Horizon Cruises Litig.*, 101 F.Supp.2d at 207 ("With respect to any claim as to which admiralty jurisdiction is unavailable,

state law would apply."). New York's choice of law rules determine which states' laws apply to these claims. *See North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir.1999) (federal court adjudicating supplemental state law claim applies the choice of law rules of the forum state).[15] In *Smith II*, this Court applied New York choice of law rules to similar facts[16] and determined that Connecticut law applied. 148 F.Supp.2d at 285. We therefore hold that Connecticut law governs plaintiffs' non-maritime claims.

### III. Plaintiffs' Claims

#### A. Negligent Repair and Maintenance

Plaintiffs' negligent repair and maintenance claims are governed by admiralty law. "The common law rules of negligence apply in admiralty law." *Diesel Tanker Ira S. Bushey, Inc. v. Tug Bruce A. McAllister*, No. 92 Civ. 5559, 1994 WL 320328, at *6 (S.D.N.Y. June 29, 1994); *see also East River Steamship Corp.*, 476 U.S. at 864, 106 S.Ct. 2295. Under common law principles, a plaintiff sets forth a prima facie case of negligence if he establishes: (1) the existence of a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) proximate causation of the plaintiffs' injuries; and (4) damages. *See Petitt v. Celebrity Cruises, Inc.*, 153 F.Supp.2d 240, 252 (S.D.N.Y.2001).

---

**13.** *See In re American Export Lines, Inc.*, 620 F.Supp. 490, 512 (S.D.N.Y.1985) (tort of failure to warn exists in admiralty) (citations omitted).

**14.** At least with respect to the Thorson plaintiffs, this Court can also hear the remaining claims under diversity jurisdiction, 28 U.S.C. § 1332. (Thorson Complt. ¶ 1.)

**15.** The same analysis would apply if this Court examined plaintiffs' non-maritime

claims pursuant to diversity jurisdiction. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**16.** The only difference in the instant motion is the identity of the plaintiffs. However, in *Smith II*, we held that the residence of Mitlof, the third-party plaintiff in that action, was insufficient to tip the balance in favor of applying another state's laws.

Norwalk Maritime contends that it owed no duty to plaintiffs to repair or maintain the *Conservator* while it owned the vessel, or to warn of the alleged defects. Plaintiffs respond that the existence of a duty of care in maritime negligence actions is determined by the "foreseeability rule," which imposes liability for those injuries which are foreseeable. (Smith Pls. Mem. Opp. Mot. Dismiss at 12–14). Applying this analysis, plaintiffs maintain that, based on its knowledge of the *Conservator*'s alleged defects and Mitlof's intended use, Norwalk Maritime could have foreseen that the vessel would capsize, and thus had a duty that ran to plaintiffs to warn Mitlof.

The pivotal issue presented is whether Norwalk Maritime owed a duty to plaintiffs. The existence or nonexistence of a duty is a question of law. *Mayer v. Cornell Univ.*, No. 96–7600, 1997 WL 32916, at *2 (2d Cir. Jan.8, 1997). Although plaintiffs are correct in their assertion that foreseeability of harm is a prerequisite to liability, it does not govern the threshold question of whether a duty exists. As explained by the Second Circuit, "[i]n tort cases, foreseeability is often confused with duty. Foreseeability is applicable to determine the scope of duty—only after it has been determined that there is a duty." *McCarthy v. Olin*, 119 F.3d 148, 156 (2d Cir.1997) (internal quotation omitted). Thus, the question presented here is whether Norwalk Maritime owed a duty to passengers of the *Conservator* under plaintiffs' negligence theory.

Plaintiffs' theory of liability is that Norwalk Maritime was negligent in failing to repair and maintain the *Conservator* before transferring ownership of the vessel, and failing to warn purchasers and users of the vessel's dangerous propensities—a theory sounding in products liability. Concepts of products liability, based on negligence and strict liability, have been adopted as part of maritime law. *East River Steamship Corp.*, 476 U.S. at 865, 106 S.Ct. 2295. The RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 1(a) (previously RESTATEMENT (SECOND) OF TORTS § 402A),[17] provides: "[o]ne engaged in the business of selling products who sells a defective product is subject to liability for harm to persons or property caused by the product defect." In order to recover for the harm caused by the *Conservator*'s alleged defects under strict liability, plaintiffs must show that Norwalk Maritime was "in the business of selling products." However, the rule "applies only to commercial sellers who are engaged in the business of selling or distributing the type of product that harmed plaintiff. The rule does not apply to an occasional seller of such products." *Id.* at § 1, Comment c. Because Norwalk Maritime is not in the business of selling boats, it cannot be held liable to plaintiffs under any theory of strict products liability. *See, e.g., Gonzalez v. Rutherford Corp.*, 881 F.Supp. 829 (E.D.N.Y.1995) (casual or occasional sellers not liable under doctrine of strict liability).

As part of plaintiffs' products liability claim premised on negligence, they allege that Norwalk Maritime owed a duty to warn purchasers and users of the vessel's dangerous propensities. (Smith Am. Complt. ¶ 171(b) & (c).) In determining whether Norwalk Maritime had a duty to warn of the *Conservator*'s alleged defects under admiralty law, we find the tort prin-

---

**17.** *See East River Steamship Corp.*, 476 U.S. at 865, 106 S.Ct. 2295 (courts sitting in admiralty have adopted RESTATEMENT (SECOND) OF TORTS, § 402(A)); *see also In re American Ex-* *port Lines, Inc.*, 620 F.Supp. at 517 (Section 402A has been generally accepted as the law of strict liability in admiralty).

ciples articulated in the RESTATEMENT (SECOND) OF TORTS § 388 applicable here.[18] Under section 388:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel ... for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Comment c to this section explains that the term "supplier" applies broadly to "any person who for any purpose or in any manner gives possession of a chattel for another's use ...." According to this broad definition, Norwalk Maritime qualifies as a supplier under § 388. Furthermore, Comment d to § 388 states that "[o]ne supplying a chattel to be used or dealt with by others is subject to liability under the rule stated in this Section, not only to those for whose use the chattel is supplied *but also to third persons whom the supplier should expect to be endangered by its use.*" (Emphasis added.) Applying the requirements of § 388 to plaintiffs' allegations, we hold that plaintiffs may adduce facts to support a claim that Norwalk Maritime breached a duty owed to plaintiffs. If Norwalk Maritime knew or had reason to know that, as a result of the vessel's latent defects and limitations, the *Conservator* would be dangerous for Mitlof's intended use, and had reason to believe that Mitlof would not discover these defects, it could be found liable to prospective passengers under § 388 for failure to warn of the dangerous conditions.[19] Because Norwalk Maritime may have owed the *Conservator*'s users a duty to warn of defects, Norwalk Maritime's motion to dismiss plaintiffs' claims involving its negligent failure to warn is denied.[20]

**B.** *Negligent Misrepresentation and Fraud*

 As they did with respect to their claim of negligent failure to warn, plaintiffs contend that Norwalk Maritime committed the tort of negligent misrepresentation because it knew of the *Conservator*'s defects and limitations, yet failed to disclose this information to Mitlof.[21] Ac-

---

**18.** *See, e.g., Littlehale v. E.I. du Pont De Nemours & Co.,* 268 F.Supp. 791, 798–99 (S.D.N.Y.1966) (applying section 388 in admiralty case); *see also In re Bay Runner Rentals, Inc.,* 113 F.Supp.2d 795, 803 (D.Md.2000) ("Federal maritime law has absorbed most common-law negligence theories, including the failure to warn of dangerous conditions.") (citing 8 Benedict on Admiralty § 4.03).

**19.** Norwalk Maritime contends that even if a duty to warn existed, this duty was discharged through the posting of the COI in the *Conservator* which stated the vessel's limitations. (Def. Reply Mem. Supp. Mot. Dismiss at 11–12.) However, plaintiffs also discuss Norwalk Maritime's duty to warn of dangers not indi-

cated in the COI, such as the vessel's weak and deficient hull and instances in which passengers had to be rescued from the vessel.

**20.** With respect to plaintiffs' products liability claim premised on negligent repair or maintenance rather than strict liability, neither the pleadings nor the briefs allege any facts to support the existence of a duty to plaintiffs to repair or maintain the *Conservator,* or any actions that would constitute a breach of this duty.

**21.** The Smith Amended Complaint also alleges that Norwalk Maritime made negligent misrepresentations as to the vessel's integrity to Richard Ciesluk, Sr., the boat's surveyor.

cording to plaintiffs' argument, Norwalk Maritime's duty to disclose the *Conservator*'s shortcomings extended to prospective passengers of the vessel because it knew those individuals would rely on its representation that the vessel was safe. Norwalk Maritime moves to dismiss plaintiffs' claims of negligent misrepresentation on the grounds that plaintiffs do not plead facts sufficient to state a claim. Under Connecticut law, in order to sustain a claim of negligent misrepresentation, plaintiffs must allege that: 1) the defendant made representations of fact which it knew or should have known to be false; 2) it knew or should have known that the plaintiff would rely on those representations; 3) the plaintiff justifiably relied on the information; and 4) the plaintiff suffered a detriment or damages as a result of such reliance. *See D'Ulisse–Cupo v. Board of Dirs. of Notre Dame High School,* 202 Conn. 206, 520 A.2d 217, 223 (Conn.1987); *Larobina v. First Union Nat'l Bank,* No. CV990170845S, 2001 WL 1681842, at *7 (Conn.Super.Ct. Dec.13, 2001).

Plaintiffs are unable to sustain their claims of negligent misrepresentation. All of the alleged misrepresentations were made to Mitlof, not plaintiffs, in connection with his purchase of the *Conservator.*[22] Most importantly, plaintiffs do not allege the requisite element of justifiable reliance by plaintiffs on Norwalk Maritime's alleged misrepresentations. "[P]laintiffs must prove justifiable and detrimental reliance on [the] misrepresentations to prevail on their claims of . . . negligent misrepre-

sentation." *Cohn v. Massachusetts Mut. Life Ins. Co.,* 189 F.R.D. 209, 216 (D.Conn. 1999). There is no allegation, in either the Thorson Complaint or the Smith Amended Complaint, that plaintiffs relied upon, or were even cognizant of, any representation made by Norwalk Maritime. Plaintiffs were most likely unaware that Norwalk Maritime had been the seller of the *Conservator.* Any suggestion that plaintiffs relied on a representation by Norwalk Maritime in boarding the vessel is implausible. Plaintiffs' claims of negligent misrepresentation against Norwalk Maritime are thus dismissed.

■ Plaintiffs' fraud claims fail for similar reasons. *See Cohn,* 189 F.R.D. at 216 (justifiable reliance is also a required element of fraud under Connecticut law). The factual allegations relating to the claims of fraud are the same as those advanced with respect to the negligent misrepresentation claims; namely, that Norwalk Maritime was aware of, yet failed to disclose, the dangerous propensities of the *Conservator.* Although the Smith Amended Complaint does summarily state that plaintiffs "did in fact [ ] reasonably rely" on Norwalk Maritime's alleged fraud (Smith Am. Complt. ¶ 162), this conclusory statement, without additional allegations of reliance, is insufficient. This is especially true considering the improbability of plaintiffs awareness of any representation made by Norwalk Maritime. Moreover, allegations of fraud are subject to the heightened pleading requirements of FED. R. CIV. P. 9(b) which provides: "In all averments of fraud or mistake, the circumstances con-

---

(Smith Am. Complt. ¶¶ 152–53.) This allegation, however, in no way changes the analysis with respect to this claim.

22. In addition to the alleged misrepresentations made directly to Mitlof, plaintiffs allege that Norwalk Maritime made misrepresentations in its public advertisement of the *Conser-*

*vator.* (Thorson Complt. ¶ 32; Smith Am. Complt. ¶ 147.) However, plaintiffs can not convincingly suggest that this advertisement was directed to future passengers of a prospective purchaser of the vessel, nor that plaintiffs in any way relied on this advertisement.

stituting fraud or mistake shall be stated with particularity. Malice, intent, and other condition of mind of a person may be averred generally." [23] Furthermore, plaintiffs are required to plead facts that give rise to a "strong inference" that Norwalk Maritime had an intent to defraud. *See, e.g., Caputo v. Pfizer, Inc.,* 267 F.3d 181, 191 (2d Cir.2001). Plaintiffs have failed to satisfy the heightened pleading standard of Rule 9(b). For example, the Smith Amended Complaint merely states that Norwalk Maritime made "fraudulent representations" to Mitlof and Ciesluk with respect to the condition of the vessel. (Smith Am. Complt. ¶ 161.) However, this conclusory allegation alone fails to give rise to a strong inference of Norwalk Maritime's intent to defraud prospective passengers of the *Conservator.* Plaintiffs' fraud claims against Norwalk Maritime are also dismissed.

## C. *Violation of Statutory Duty*

■ Plaintiffs charge Norwalk Maritime with negligence *per se* for violating alleged statutory duties under the Federal Boat Safety Act ("FBSA"), 46 U.S.C. § 4301 *et seq.* Norwalk Maritime, however, maintains that the FBSA is inapplicable to both the *Conservator* and Norwalk Maritime's actions taken with respect to the vessel.

According to 46 U.S.C. § 4301(a), the FBSA applies to "recreational vessel[s] and associated equipment." A "recreational vessel" is further defined as a vessel: (A) manufactured or operated primarily for pleasure; or (B) leased, rented, or chartered to another for the latter's pleasure. 46 U.S.C. § 2101(25). In *Smith I,* we held that because Mitlof operated the *Conservator* as a charter for hire as well as a water taxi, it qualified as a "recreational vessel" under § 2101(25)(B). 130 F.Supp.2d at 582. We express no opinion as to whether the *Conservator* would have qualified as a "recreational vessel" at the time of Norwalk Maritime's transfer to Mitlof because, even assuming that the *Conservator* itself came under the FBSA, Norwalk Maritime would not be subject to the statute's provisions upon which plaintiffs impliedly base their claims. [24]

The section of the FBSA dealing with the duty to warn of alleged defects refers only to the duty of a recreational vessel manufacturer. 46 U.S.C. § 4310. [25] Plaintiffs argue that the modification and repair that Norwalk Maritime performed on the *Conservator* raise a question of fact as to whether it qualifies as a manufacturer under the FBSA. However, a "recreational

---

**23.** Plaintiffs' argument that Norwalk Maritime somehow "waived" its objection involving Rule 9(b) pleading requirements by filing a "detailed answer" without raising this objection is without merit. (*See* Smith Pls. Mem. Opp. Mot. Dismiss at 16–17.) The instant motion has been filed by Norwalk Maritime in lieu of an answer. Any prior pleadings or motions filed by Norwalk Maritime involved the third-party action by Mitlof and not the instant pleadings.

**24.** The Smith Amended Complaint, for example, alleges that Norwalk Maritime had a duty under the FBSA to warn owners and prospective purchasers of defects of which it was aware. (Smith Am. Complt. ¶ 170.)

**25.** 46 U.S.C. § 4310(b) states, in relevant part:

> If a recreational vessel ... has left the place of manufacture and the *recreational vessel manufacturer* discovers or acquires information that the manufacturer decides ... indicates that a recreational vessel ... either fails to comply with the regulation, or contains a defect that creates a substantial risk of personal injury to the public, the manufacturer shall provide notification of the defect or failure of compliance .... (Emphasis added.)

vessel manufacturer" is defined as "a person engaged in the manufacturing, construction, assembly, or importation of recreational vessels". 46 U.S.C. § 2101(26). Nowhere in this definition is it implied that one who repairs or modifies a vessel may be considered a manufacturer. Because Norwalk Maritime was not a boat manufacturer, but a "one-time, non-commercial seller of a used vessel" (Def. Reply Mem. Supp. Mot. Dismiss at 13), the relevant provisions of the FBSA are inapplicable even if the *Conservator* comes under that Act. Plaintiffs' claims of violation of a statutory duty by Norwalk Maritime are thus dismissed.

### D. *Breach of Contract*

■ Plaintiffs contend that Norwalk Maritime breached its contract with Mitlof to provide a safe, merchantable vessel with a COI valid for its intended use—a contract to which plaintiffs were third-party beneficiaries. Defendant responds that plaintiffs have not alleged sufficient facts to permit a finding that they were third-party beneficiaries under the contract between Norwalk Maritime and Mitlof.

■ A third-party beneficiary may enforce contractual obligations without being an actual party to a contract. *Rapaport & Benedict, P.C. v. Stamford,* 39 Conn.App. 492, 664 A.2d 1193, 1196–97 (Conn.App.Ct.1995). "The proper test to determine whether a [contract] creates a third party beneficiary relationship is whether the parties to the [contract] intended to create a *direct obligation* from one party to the [contract] to the third party." *Gateway Co. v. DiNoia,* 232 Conn. 223, 654 A.2d 342, 346–47 (Conn.1995) (emphasis in original) (citing *Knapp v. New Haven Road Constr. Co.,* 150 Conn. 321,

189 A.2d 386 (Conn.1963)). "The parties' intent is to be determined from the terms of the contract read in light of the circumstances attending the making of the contract, including the motives and purposes of the parties." *Delacroix v. Lublin Graphics,* 993 F.Supp. 74, 83 (D.Conn. 1997). Other than summarily stating that they were intended third-party beneficiaries of the contract (Thorson Complt. ¶ 69; Smith Am. Complt. ¶ 178), plaintiffs have alleged no facts to suggest that Norwalk Maritime intended, through its contract with Mitlof, to create obligations to prospective passengers of the *Conservator.* *See, e.g., Infinity Ins. Co. v. Worcester Ins. Co.,* 28 Conn. L. Rptr. 278 (Conn.Super.Ct.2000) (granting defendant's motion to dismiss in part because there were no allegations that the parties to a contract intended to confer a benefit on the plaintiff). There is no indication, from the pleadings or otherwise, that the contract between Mitlof and Norwalk Maritime was intended as anything more than a contract for sale of the vessel. Moreover, plaintiffs' opposition papers fail to respond to Norwalk Maritime's argument in this respect. Because we fail to see how plaintiffs were intended third-party beneficiaries of Norwalk Maritime's contract with Mitlof, plaintiffs' breach of contract claims are hereby dismissed.

### E. *Breach of Express and Implied Warranties*

■ Plaintiffs allege that Norwalk Maritime breached certain express and implied warranties made to Mitlof in connection with his purchase of the *Conservator.* Specifically, plaintiffs' claim that Norwalk Maritime impliedly warranted, pursuant to CONN. GEN. STAT. ANN. § 42a–2–315,[26] that

---

**26.** CONN. GEN. STAT. ANN. § 42a–2–315 states, in relevant part:

Where the seller at the time of contracting has reason to know any particular purpose

the *Conservator* was fit for Mitlof's intended use, and expressly warranted, pursuant to U.C.C. § 2–313(1)(a),[27] that the vessel was in excellent condition with a valid COI. (Thorson Complt. ¶¶ 74, 83; Smith Am. Complt. ¶¶ 181, 188.)

Like plaintiffs' breach of contract claims, plaintiffs' claims for breach of express and implied warranties ultimately fail because plaintiffs are not third-party beneficiaries of any alleged warranties made by Norwalk Maritime to Mitlof. According to U.C.C. § 2–318 (Alternative A),[28] express or implied warranties extend beyond the buyer "to any natural person who is in the household of [the] buyer or who is a guest in [the buyer's] home if it is reasonable to expect that such a person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." Because plaintiffs were not family members or household guests of Mitlof at the time of the accident, they do not fit within the category of third-party beneficiaries to express or implied warranties

recognized by Connecticut law.[29] *See, e.g., Halsam Co. v. Everglade,* No. CV 940141045S, 1996 WL 488910, at \*1 (Conn.Super.Ct. Apr.14, 1997) (categories of third-party beneficiaries limited to those enumerated in the statute); *Wagner v. Clark Equip. Co.,* No. 520641, 1995 WL 356736, at \*2 (Conn.Super.Ct. June 7, 1995) (plaintiff not a beneficiary of an implied warranty because he was not a family member or guest in the house of the buyer). Plaintiffs' claims for breach of express and implied warranties are therefore dismissed.

## CONCLUSION

For the foregoing reasons, plaintiffs' claims of negligent repair or maintenance, negligent misrepresentation, fraud, violation of statutory duty, breach of contract and breach of express and implied warranties against Norwalk Maritime are dismissed with prejudice. However, Norwalk Maritime's motion to dismiss with respect

---

for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ... an implied warranty that the goods shall be fit for such purpose. The language of § 42a–2–315 mirrors that found in U.C.C. § 2–315.

27. U.C.C. § 2–313(1)(a) states that: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the affirmation or promise."

28. U.C.C. § 2–318 provides three alternative provisions governing the status of third-party beneficiaries to express or implied warranties. Connecticut has adopted Alternative A, the most restrictive provision, which has been codified by CONN. GEN. STAT. ANN. § 42a–2–318.

29. Although it may be tempting to draw from this limited category of third-party beneficia-

ries an analogy to occupants of premises other than the buyer's home—a car or a boat for example—this extension is not warranted by Connecticut law. The Connecticut legislature chose to adopt the most restrictive of the three alternatives stated in U.C.C. § 2–318. Had Connecticut adopted one of the two more liberal alternatives, plaintiffs in the instant action would arguably have come within the definition of third-party beneficiaries. A sentence added to § 42a–2–318 directs that "the section is neutral with respect to case law or statutory law which extend warranties for personal injuries to other persons." However, this Court has not uncovered any case or statute extending third-party beneficiary status to similarly situated plaintiffs. In fact, when faced with the question of whether a seller's warranty extended to an injured occupant of the buyer's vehicle, a Connecticut court held that § 42a–2–318 precluded the passenger from bringing suit as a third-party beneficiary. *Delgatti v. Cosmos,* No. CV 950127798, 1997 WL 193195 (Conn.Super.Ct. April 14, 1997).

508

to plaintiffs' claim of negligent failure to warn is denied.

SO ORDERED.