*337
 
 OPINION OF THE COURT
 

 Smith, J.
 

 Gabriella Humphrey, an infant represented by her parents, brought an action against the owner of the building in which she resides, and others, claiming injuries caused by the ingestion of lead paint. The action presently before us, brought by the building owner and others (plaintiffs), seeks a declaration that defendant insurer, Guaranty National Insurance Company, must defend and indemnify them in that action.
 

 I
 

 On August 2, 1994, plaintiffs entered into a commercial general liability insurance policy (the underlying policy) with the defendant which provided coverage for personal injuries occurring at premises located at 124 West 72nd Street in Manhattan during the period June 20, 1994 to June 20, 1995. Paragraph 6 of the rider to that policy contained a specific exclusion for injuries caused by lead paint.
 
 *
 

 On August 4, 1994, plaintiffs purchased an umbrella policy from defendant covering the same period as the underlying policy. The umbrella policy contained two types of coverage— Coverage A and Coverage B. Coverage A provided excess coverage for damages exceeding the policy limits of the underlying policy. Coverage A reads in pertinent part: “We will pay those sums that the ‘Insured’ becomes legally obligated to pay as damages arising out of an ‘Occurrence’ which are in excess of the ‘Underlying Insurance’ stated in Schedule A of this policy. The coverage
 
 provisions
 
 of the scheduled
 
 ‘Underlying Policies’
 
 are incorporated as a part of this policy” (emphasis supplied).
 

 Coverage B of the umbrella policy provided additional primary coverage for certain claims not already covered by the underlying policy. Coverage B reads as follows:
 

 ‘With respect to any loss covered by the terms and conditions of this policy, but not
 
 covered as warranted by the ‘Underlying Policies’
 
 listed on Schedule A, or any other ‘Underlying Insured,’ we will pay on your behalf for loss caused by an ‘Occurrence’ which is in excess of the ‘Retained Limit’ for
 
 *338
 
 liability imposed on you by law or assumed by you under contract for ‘Bodily Injury,’ ‘Personal Injury,’ ‘Property Damage’ or ‘Advertising Injury’ ” (emphasis supplied).
 

 Coverage B did not contain an incorporation clause. In addition, the umbrella policy contained a clause specifically excluding coverage for injuries caused by pollution.
 

 On September 18, 1995, Gabriella Humphrey, an infant tenant in the building owned by Westview Associates, represented by her parents, brought suit against plaintiffs for injuries allegedly sustained by exposure to lead paint during the period covered by the policies. By letters dated October 5, 1995, plaintiffs requested that defendant defend and indemnify them in the
 
 Humphrey
 
 personal injury action. By separate letters dated October 20, 1995, defendant disclaimed any duty to defend or indemnify plaintiffs under both the underlying and the umbrella policy. Defendant relied on the specific exclusion for lead paint in paragraph 6 of the underlying policy and the pollution exclusions in both policies.
 

 Following receipt of the disclaimers, plaintiffs commenced the instant action, seeking a declaration that defendant was required to defend and indemnify them in the
 
 Humphrey
 
 action. Supreme Court granted plaintiffs’ motion for summary judgment, holding that defendant had a duty to defend the underlying action under Coverage B of the umbrella policy. The court held that although the lead paint exclusion was incorporated into Coverage A of the umbrella policy and precluded coverage under that portion of the policy, it was not incorporated into Coverage B. In addition, the court held that the pollution exclusion in the umbrella policy did not bar coverage for the lead paint claim. The court held in abeyance the issue of whether defendant had a duty to indemnify. The Appellate Division reversed, holding that the lead paint exclusion in the primary policy was incorporated into the entire umbrella policy. In the view of the Appellate Division, the interpretation adopted by Supreme Court “negates the clause incorporating the exclusions” and makes the incorporation provision in Coverage A meaningless. This Court granted leave to appeal.
 

 II
 

 The umbrella policy provides for two separate and distinct types of coverage — Coverage A and Coverage B. Coverage A provides excess coverage for injuries already covered by the underlying policy. In this regard, Coverage A contains a provi
 
 *339
 
 sion specifically incorporating the “coverage provisions” of the underlying policy. Indeed by definition, “excess” coverage covers the same types of claims as the primary policy, but for additional amounts. In addition, the incorporation clause in Coverage A was properly read to incorporate the exclusions in the underlying policy
 
 (see, New York Univ. v Continental Ins. Co.,
 
 87 NY2d 308, 323 [“coverage” is the net total of policy inclusions minus exclusions]).
 

 Coverage B, by contrast, provides additional primary coverage for injuries not covered in the underlying policy. Unlike Coverage A, Coverage B does not incorporate the exclusions contained in the underlying policy. Significantly, there is no incorporation-by-reference clause in Coverage B and no exclusion for lead paint appears there. Exclusions must be specific and cannot be extended by mere interpretation or implication
 
 (see, Seaboard Sur. Co. v Gillette Co.,
 
 64 NY2d 304, 311;
 
 Continental Cas. Co. v Rapid-American Corp.,
 
 80 NY2d 640, 652).
 

 Moreover, the umbrella policy contains specific exclusions for other types of injuries including alcohol, asbestos and pollution claims, but not for lead paint. Those provisions would be completely unnecessary if, as defendant argues, all of the exclusions in the underlying policy are incorporated by reference into the entirety of the umbrella policy’s coverage. Thus, defendant’s interpretation would render the umbrella policy’s specific exclusions mere surplusage, a result to be avoided
 
 (see, Bretton v Mutual of Omaha Ins. Co.,
 
 66 NY2d 1020,
 
 affg
 
 110 AD2d 46, 50
 
 for reasons stated below).
 
 At the very least, defendant’s interpretation presents an ambiguity in the umbrella policy which must be resolved against the insurer, as drafter of the agreement
 
 (see, Handelsman v Sea Ins. Co.,
 
 85 NY2d 96, 101).
 

 Contrary to the Appellate Division, this interpretation does not “effectively negate” the incorporation clause in Coverage A. Coverage A and Coverage B serve different purposes: Coverage A provides excess coverage, and Coverage B provides additional primary coverage for certain injuries not covered by the primary policy. Indeed, the Appellate Division’s holding that Coverage B incorporates the exclusions in Coverage A effectively negates Coverage B and leaves the insured with only the excess coverage in Coverage A and no additional primary coverage.
 

 Defendant’s alternative argument, that the pollution exclusion clause of the umbrella policy excludes coverage for
 
 *340
 
 lead paint poisoning, must also be rejected. “To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case”
 
 (Continental Cas. Co. v Rapid-American Corp.,
 
 80 NY2d 640, 652, supra;
 
 see also, Technicon Elecs. Corp. v American Home Assur. Co.,
 
 74 NY2d 66, 73-74;
 
 International Paper Co. v Continental Cas. Co.,
 
 35 NY2d 322, 325-326). If the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer
 
 (Hartol Prods. Corp. v Prudential Ins. Co.,
 
 290 NY 44, 49). When the exclusionary clause does not include the particular loss that the insurance company alleges, then the insured is entitled to be defended and possibly indemnified
 
 (Seaboard Sur. Co. v Gillette Co.,
 
 supra;
 
 Prashker v United States Guar. Co.,
 
 1 NY2d 584, 590).
 

 Defendant has not met its burden of showing that lead paint comes within the pollution exclusion of the umbrella policy. First, nothing in the definition of pollutants as defined in provision VII.K (3) of the umbrella policy indicates that lead paint is included in the term. That section defines pollutants as “smoke, vapors, soot, fumes, acids, sound, alkalies, chemicals, liquids, solids, gases, thermal ‘Pollutants,’ and all other irritants and ‘Contaminants.’ ” There is no language that demonstrates the drafter’s intent to incorporate lead paint into the pollution exclusion clauses. The insurer has not established that lead paint, in “clear and unmistakable language,” is included in the pollution exclusion clause. Moreover, both policies contain the general pollution exclusion while only the underlying policy contains a specific lead paint exclusion. Unless different meanings are to be ascribed to the pollution exclusion clauses in these policies, defendant’s position that lead paint injuries are excluded under the pollution exclusion, would render the specific lead paint exclusion in the underlying policy meaningless, in violation of settled canons of construction
 
 (see, Bretton v Mutual of Omaha Ins. Co., supra).
 
 It is at least ambiguous as to whether lead paint claims are excluded pursuant to the umbrella policy’s pollution exclusion. That ambiguity in the policy must be construed against the insurer.
 

 The issue of the duty to indemnify is not before us.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment granted declaring that defendant Guaranty National Insurance Company has a duty to defend plaintiffs in the subject underlying personal injury action.
 

 
 *341
 
 Chief Judge Kaye and Judges Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order reversed, etc.
 

 *
 

 The exclusion reads, “It is agreed that this insurance does not apply to any liability for bodily injury or personal injury arising out of exposure to, ingestion of lead paint or any substance or matter containing lead paint or the residue of lead paint.”