**HARTFORD FIRE INSURANCE COMPANY, Plaintiff,**

v.

**Joseph MITLOF d/b/a Hudson Valley Waterways, Village of Nyack, Nyack Parking Authority, and Key Bank U.S.A., Defendants,**

**M. Diane Koken, Liquidator for Reliance Insurance Company, Intervenor.**

**No. 99 CIV. 9841(WCC).**

United States District Court, S.D. New York.

June 26, 2002.

Hughes Hubbard & Reed, LLP, New York City (Norman C. Kleinberg, David R. Biester, of counsel), for plaintiff.

Joseph Mitlof, Nyack, NY, defendant pro se.

MacCartney, MacCartney, Kerrigan & MacCartney, Nyack, NY (Chris J. Walsh, William K. Kerrigan, of counsel), for defendants Village of Nyack, Nyack Parking Authority.

Stradley Ronon Stevens & Young, LLP, Philadelphia, PA (Ellen Rosen Rogoff, Gina M. Scamby, of counsel), for intervenor M. Diane Koken, Liquidator for Reliance Insurance Company.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

In this declaratory judgment action, plaintiff Hartford Fire Insurance Company ("Hartford") seeks, *inter alia,* to void or deny coverage under a marine insurance policy that it issued to defendant Joseph Mitlof d/b/a Hudson Valley Waterways ("Mitlof"). Hartford now moves for summary judgment declaring that there is no insurance coverage under the policy for liability in connection with an accident involving Mitlof's vessel *Conservator* on August 23, 1999. For the reasons that follow, Hartford's motion is granted.

## BACKGROUND[1]

In 1998, Hartford issued Mitlof a marine hull protection and indemnity policy with passenger vessel amendments and warran-

---

1. The facts and prior proceedings of this action are set forth in this Court's April 17 and December 15, 2000 Opinions and Orders, fa-

ties (the "Hartford Policy") for Mitlof's vessel *Lenape Seal.* (Pl.Rule 56.1 Stmt. ¶ 1; Biester Aff., Ex. A.) On July 14, 1998, the Hartford Policy was amended to provide coverage to a second vessel, the *Conservator.* (Pl.Rule 56.1 Stmt. ¶ 2; Biester Aff., Ex. B.) The Hartford Policy covered both the vessels themselves and liability resulting from the loss of life or personal injury in their use. (Biester Aff., Ex. A.) The Hartford Policy contained a warranty, entitled "Passenger and Crew Warranty" (the "Passenger Warranty"), which provided, in part:

*PASSENGER AND CREW WARRANTY*

Warranted that the number of passengers shall not exceed 49, or the number of passengers permitted by the United States Coast Guard or other governmental authority, whichever is less.

(*Id.*) Also attached to the Hartford Policy were American Institute Hull Clauses ("Hull Clauses"). (*Id.*) Defendants Village of Nyack and Nyack Parking Authority ("Nyack defendants") are named as additional insureds in the Hartford Policy and defendant Key Bank U.S.A. is named as a loss payee.[2] (Biester Aff., Ex. B.)

When Mitlof purchased the *Conservator* from the Maritime Aquarium at Norwalk, Inc. ("Norwalk Maritime"),[3] the vessel was certified by the United States Coast Guard ("USCG") for the carriage of twenty passengers and one crew member within the limits of the Norwalk Harbor area. (Biester Aff., Ex. K (USCG Certificate of Inspection ("COI") for the *Conservator*).) After Norwalk Maritime sold the *Conservator* to Mitlof, it contacted the USCG to revoke the COI, which was done effective August 6, 1998. (Pl.Rule 56.1 Stmt. ¶ 15.) On August 23, 1998, the *Conservator* capsized while carrying passengers on the Hudson River (the "Accident"). (*Id.* ¶ 6.) At the time of the Accident, there were at least twenty-five passengers and two crew members on board. (Amicus Rule 56.1 Stmt. ¶ 5; *see also Smith v. Mitlof,* 130 F.Supp.2d 578, 582 (S.D.N.Y.2001).)

After conducting an investigation, Hartford notified Mitlof, by letter dated October 26, 1998, that there was no coverage under the Hartford Policy for the Accident. (Biester Aff., Ex. P.) One of the reasons cited for the denial of coverage was breach of the Passenger Warranty. (*Id.*) On September 17, 1999, Hartford commenced this declaratory judgment action. In moving for summary judgment, Hartford claims that breach of the Passenger Warranty voids coverage for liability arising from the Accident.[4]

---

miliarity with which is assumed. *See Hartford Fire Ins. Co. v. Mitlof,* 193 F.R.D. 154 (S.D.N.Y.2000) (*"Hartford I"*); *Hartford Fire Ins. Co. v. Mitlof,* 123 F.Supp.2d 762 (S.D.N.Y.2000) (*"Hartford II"*). The facts relevant to the instant motion are taken from the parties' and *amicus curiae's* moving papers and Rule 56.1 Statements and are undisputed unless otherwise noted.

**2.** The Nyack defendants submitted a partial opposition to Hartford's motion for summary judgment asserting that even if this Court grants summary judgment against Mitlof, the Nyack defendants would still be entitled to coverage. (Nyack Defs.Mem.Opp.Summ.J. at 5–7.) In response, Hartford maintained that it only moved for summary judgment against

Mitlof and that the issues raised by the Nyack defendants were not properly before this Court. (Pl. Reply Mem.Opp. Nyack Defs. Mem.Opp.Summ.J. at 1–2.) We agree with Hartford, and do not now consider the Nyack defendants' arguments in connection with the instant motion.

**3.** For a discussion of the facts surrounding Mitlof's purchase of the *Conservator* from Norwalk Maritime, see this Court's April 17, 2002 Opinion and Order in the related case of *Smith v. Mitlof,* 198 F.Supp.2d 492 (S.D.N.Y. 2002) (the "Smith Action").

**4.** At present, there are a number of personal injury actions pending against Mitlof in both state and federal court brought by passengers on the *Conservator* on the day of the Accident.

## DISCUSSION

### I. *Summary Judgment Standard*

Under FED.R.CIV.P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994).

### II. *Choice of Law*

■■■ The Hartford Policy is a contract for marine insurance that falls within the admiralty jurisdiction of this Court. *See Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 161 (2d Cir.1998). Marine insurance policies are governed by federal admiralty law when there is an established federal rule, and by state law when there is not. *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 305–06 (2d Cir.1987) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313–14, 75 S.Ct. 368, 99 L.Ed. 337 (1955)). Because there is no specific federal rule governing the construction of marine insurance contracts, *see Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir.1999), New York law applies. *See Hartford I*, 193 F.R.D. at 157 (New York law applies to the Hartford Policy). New York law therefore determines "the scope and validity of the marine insurance policy provisions involved and the consequences of breaching them." *Advani*, 140 F.3d at 162 (internal quotations omitted).

### III. *Breach of Warranty*

■■■ A warranty is a promise by the insured to do or not to do some thing that the insurer considers significant to its risk of liability under an insurance contract. *Commercial Union*, 190 F.3d at 31. Warranties hold a special status under the law governing maritime insurance contracts. *Id.* While in all other areas of insurance, an insured will generally not be precluded from recovery if the insured breaches a warranty that is collateral to the primary risk, *see* N.Y.INS.L. § 3106(b), warranties in maritime insurance contracts must be strictly complied with. *Commercial Union*, 190 F.3d at 31. New York's Insurance Law specifically carves out a maritime exception from its general rule regarding breach of collateral warranties. *Id.* at 32; N.Y.INS.L. § 3106(c) ("This section [stating that

(Pl.Mem.Supp.Summ.J. at 6.) Plaintiffs in the Smith action and the companion action *Thorson v. Mitlof*, 01 Civ. 7880(WCC) (collectively the "Tort Claimants"), submitted a brief as *amicus curiae* (the "amicus brief") in response to Hartford's motion for summary judgment. Mitlof, in an affirmation dated March 8, 2002, stated that he adopted the amicus brief as his own.

breach of collateral warranties shall not preclude recovery] shall not affect the express or implied warranties under a contract of marine insurance.") Under New York law, recovery under a marine insurance contract is precluded if a warranty is breached, regardless of its materiality to the insurer's risk. *See Commercial Union*, 190 F.3d at 32. As the Second Circuit explained, "[t]he rule of strict compliance with warranties in maritime insurance contracts stems from the recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on representations and warranties made by insureds regarding their vessels' condition and usage." *Id.* at 31–32. The Passenger Warranty is undoubtedly a warranty under a contract for marine insurance and must therefore be strictly complied with as a condition precedent to coverage. It is thus necessary to construe the contract in order to determine whether the Passenger Warranty was breached on the day of the Accident, thereby precluding coverage.

■ "The starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous." *Id.* at 32–33 (quoting *Ingersoll*, 829 F.2d at 306). "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading." *Id.* at 33 (quotations omitted). If an insurance policy is ambiguous, all ambiguity must be resolved in favor of the policy holder in order to promote coverage for losses to which the policy relates. *See Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir.1994); *Ingersoll*, 829 F.2d at 306. The rule that insurance policies are to be construed in favor of the insured is applied most strictly in construing the meaning of

an exclusion from coverage. *Ingersoll*, 829 F.2d at 306. "In order to be enforced, exclusions or exceptions from policy coverage must be specific and clear; they are not to be extended by interpretation or implication." *Kimmins*, 19 F.3d at 81 (internal quotations omitted). We therefore turn to the terms of the Passenger Warranty to determine whether it is ambiguous.

■ The Passenger Warranty states that the covered vessel shall not carry more than forty-nine passengers, *"or the number of passengers permitted by the United States Coast Guard or other governmental authority, whichever is less."* (Biester Aff., Ex. A (emphasis added).) In the amicus brief, the Tort Claimants maintain that the Passenger Warranty is vague and ambiguous. In support of this claim, they argue that an agent for Hartford received the COI for the *Conservator* issued to Norwalk Maritime, which stated that the number of permissible passengers on the vessel was limited to twenty plus one crew member. The Tort Claimants argue that if Hartford wanted to limit the number of passengers allowed on the *Conservator* to the number permitted by the COI, it would have stated this in the Warranty instead of setting the number at forty-nine. (Amicus Brief at 14–15.) Although it is true that Hartford could have amended the Passenger Warranty after receiving the *Conservator's* COI to reflect that the number of passengers on the vessel could not exceed twenty, this was rendered unnecessary by the subsequent clause of the Passenger Warranty. The second clause of the Passenger Warranty clearly states that the number of passengers on a vessel under the Hartford Policy shall not exceed the number permitted by the USCG or other governmental authority. Because a COI reflects the number of passengers permitted by the USCG on a particular vessel,[5] the maximum number of

---

5. *See* 46 C.F.R. § 176.100(b) (each vessel

must be in compliance with the terms of the

passengers allowed under the Passenger Warranty could not exceed the number permitted by the COI.[6] The Tort Claimants' contention that the Passenger Warranty is ambiguous because it does not explicitly refer to the number of passengers authorized by the COI is unpersuasive.

■ The Tort Claimants also argue in the amicus brief that the Passenger Warranty's reference to the regulations of the "Coast Guard or other governmental authority" is vague because of the "myriad" regulations of the USCG and other authorities. (Amicus Brief at 15.) We disagree. The Passenger Warranty unambiguously states that the number of passengers on a covered vessel may not exceed the number permitted by the USCG or other governmental body. Although there may be a number of regulations governing the carriage of passengers, if a governmental regulation exists limiting the number of passengers allowed on a vessel, the Passenger Warranty clearly provides that this limit may not be exceeded. This Court fails to discern any ambiguity in this provision. Nor do the Tort Claimants provide any competing interpretation. We thus conclude that the Passenger Warranty is unambiguous and must be strictly complied with as a condition precedent to coverage.

■ It is undisputed that the *Conservator* was carrying at least twenty-five passengers and two crew members when the Accident occurred. (See Amicus Rule 56.1 Stmt. ¶ 5.) The COI issued to Norwalk Maritime provides that the *Conservator* is permitted to carry no more than twenty passengers plus one crew member. (Biester Aff., Ex. K.) Because the *Conservator*

was carrying substantially in excess of twenty passengers at the time of the accident, the number of passengers authorized by the COI was exceeded and the Passenger Warranty was breached. However, because Norwalk Maritime had revoked its COI and Mitlof had not yet obtained a new one, the *Conservator* was operating without a valid COI. Without a COI, the *Conservator* could not lawfully operate with more than six passengers. *See* 46 C.F.R. § 176.100(a) ("A [small passenger vessel] may not be operated without having on board a valid U.S. Coast Guard Certificate of Inspection."); 46 U.S.C. § 2101(35)(A) (defining "small passenger vessel" as a vessel less than 100 tons carrying more than six passengers, including at least one passenger for hire). Therefore, whether or not the *Conservator* had a valid COI, the Passenger Warranty was not complied with at the time of the Accident because the number of passengers clearly exceeded that permitted by the USCG. Although we regret that the innocent passengers of the *Conservator* may be left without effective legal remedy for their injuries through no fault of their own, legal precedent compels us to hold that because the Passenger Warranty was breached, Hartford is entitled to deny Mitlof coverage for liability arising from the Accident.

## IV. *Hull Clauses*

■ The Tort Claimants' core argument in favor of coverage for the Accident focuses on provisions of the Hull Clauses attached to the Hartford Policy. According to the amicus brief, the breach of the Passenger Warranty was caused by a peril explicitly covered in the Hull Clauses.

---

COI when any passengers are aboard).

**6.** The Tort Claimants maintain that the Code of Federal Regulations ("C.F.R.") contains numerous references to instances where the number of persons can exceed the certificate

of inspection. (Amicus Brief at 15.) However, the Tort Claimants have not indicated any provision of the CFR, or any other governmental regulation, that would have permitted the *Conservator* to carry in excess of twenty passengers at the time of the Accident.

Specifically, the Tort Claimants cite the "Perils" section of the Hull Clauses which states: "Touching the Adventures and Perils *which the underwriters are contented to bear and take upon themselves,* they are … *Barratry of the Master* and Mariners and of all like Perils…." (Biester Aff., Ex A (emphasis added).) The Tort Claimants maintain that the Accident was caused by "barratry of the master," which is defined, in part, as "an act committed by the master or mariners of a ship involving a deliberate and willful disobedience of the owner's instructions." *United States Fire Ins. Co. v. Cavanaugh,* 732 F.2d 832, 835 (11th Cir.1984). Simple negligence cannot be barratry. *Fishing Fleet, Inc. v. Trident Ins. Co.,* 598 F.2d 925, 928 (5th Cir.1979). As the Tort Claimants argue, Mitlof had a strict company policy against passenger overloading. (Amicus Brief at 4.) The ship's Master, Daniel Sheehan, was therefore responsible for any passenger overloading that occurred on the day of the Accident. (*Id.*) Furthermore, Sheehan, in connection with the Accident, pled guilty to 18 U.S.C. § 1115—misconduct or neglect of a ship's officer by whose misconduct, negligence, or inattention to his duties on such vessel the life of any person is destroyed. (Amicus Rule 56.1 Stmt. ¶ 13.) Because Sheehan acted in contravention of Mitlof's company policy by overloading the *Conservator,* the Tort Claimants maintain that he committed barratry—a covered peril under the Hull Clauses. The Tort Claimants further argue that because barratry is a covered peril, the act of barratry cannot operate to breach the warranty and void coverage. (Amicus Brief at 5 (citing *Cavanaugh,* 732 F.2d at 835).) "To hold otherwise would be to find that one covered peril could operate to relieve the insurer of any loss which occurred from another covered peril." (*Id.*)

■ Although the Tort Claimants' argument is alluring, it has a serious flaw. The Hartford Policy includes two separate sets of insurance coverage: Coverage A and Coverage B. Coverage A provides hull coverage ("Hull coverage") while Coverage B provides protection and indemnity coverage ("P & I coverage"). (*See* Biester Aff., Ex. A.) The distinctness of the two sets of coverage is illustrated by the fact that they involve separate terms, premiums and coverage limits.[7] (*Id.*) The Hull coverage insures against damage to the vessel itself, while the P & I coverage insures against liability for claims by third parties for personal injuries. (*Id.*) It is clear from the terms of the Hartford policy that only the Hull coverage, and not the P & I coverage, incorporates the Hull Clauses. For example, the first page of the attached Hull Clauses states that the premium paid for the insurance is $400, the exact premium for the Hull coverage and well below the premium for the P & I coverage. (Amicus Rule 56.1 Stmt., Ex. A.) In addition, in the passenger vessel amendments attached to the Hartford Policy, the Hull coverage amendment refers specifically to the Hull Clauses, but they are not mentioned in the P & I coverage amendment. (*Id.*) Thus, it is apparent that the Hull Clauses only provide insurance coverage for damage to the vessel itself. *See Westview Assoc. v. Guar. Nat'l Ins. Co.,* 95 N.Y.2d 334, 338–40, 717 N.Y.S.2d 75, 740 N.E.2d 220 (2000) (in an insurance policy, the incorporation of exclusions in one type of coverage did not apply to a separate and distinct type of coverage). The P & I coverage simply does not incorporate the Hull Clauses, and the Tort Claimants may not rely on provi-

---

**7.** The Hull coverage has a $400 premium and a coverage limit of $20,000 while the P & I coverage has a premium of $5,030 and a coverage limit of $5,000,000.

sions in the Hull Clauses to impose indemnity obligations on Hartford for third-party personal injury claims.[8] The Tort Claimants' argument that provisions of the Hull Clauses preclude Hartford from denying coverage for liability from the Accident are thus unpersuasive.

## CONCLUSION

For the foregoing reasons, Hartford has no obligation under the Hartford Policy to indemnify Mitlof for liability arising from the Accident. Hartford's motion for summary judgment is granted. Judgment to be entered by the Clerk of Court.

SO ORDERED.

---

8. The Tort Claimants argue that they have an interest in the Hull coverage as well as the P & I coverage because they have sued the vessel *in rem*. However, as Hartford points out, Mitlof has never made any claim under the Hull Clauses, and any claims by third parties for personal injuries would fall under the P & I coverage. (Pl. Reply Mem.Supp. Summ.J. at 3.) We therefore express no opinion at this time as to whether Mitlof has a valid claim under the Hartford Policy for damage to the *Conservator* itself.