UNITED STATES UNDERWRITERS
INSURANCE COMPANY,
Plaintiff,

v.

AFFORDABLE HOUSING FOUNDATION, INC., Mountain Developers Associates, LLC, and Jose Raimundo Madeira, Defendants.

No. 01 CIV. 11840(CM).

United States District Court,
S.D. New York.

April 3, 2003.

Steven Verveniotis, Miranda & Sokoloff, L.L.P., Mineola, NY, for United States Underwriters Insurance Company.

Joshua L. Mallin, Weg and Myers, P.C., Bianka Perez–Vega, Ginarte, O'Dwyer et al., New York City, for Affordable Housing Foundation, Inc., Mountain Developers Associates, LLC, Jose Raimundo Madeira.

## DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Jose Raimundo Madeira injured himself while working construction on a site owned and operated by defendants Affordable Housing Foundation, Inc. and Mountain Developers Associates, LLC. Raimundo was employed by C & L Construction, a subcontractor working on the site. He has since sued Affordable Housing, Mountain Developers and C & L in an action now pending in this Court. (the underlying action)

United States Underwriters Insurance Company (USU) issued an insurance policy to Affordable and Mountain. It has denied coverage in the underlying action. It brings the instant case seeking a declaration that its policy does not cover Affordable and Mountain for Raimundo's injury. It has moved for summary judgment on its claim. Affordable and Mountain have cross-moved for summary judgment in their favor. Raimundo is technically in default in this action, but while he is no doubt interested in the outcome, he is not a party to the insurance policy and he has nothing to add to the debate.[1]

The court concludes that the policy does not cover the injury that Raimundo incurred while working at the Affordable/Mountain site. Thus, I grant plaintiff's motion and deny defendants' cross motion.

### The Relevant Provisions

USU issued a general liability policy to Affordable and Mountain (the named insureds) covering the period January 24, 2001 through January 24, 2002. The parties agree that the policy is a valid contract and is enforceable in accordance with its terms.

■ Employees of the named insureds are covered persons under the Policy, s

---

**1.** When served with the motion for summary judgment, Raimundo's counsel finally filed an answer to the complaint. The Court will ac-cept the pleading, despite the fact that it was not timely.

long as the acts covered were performed within the scope of their employment. (Sec. II.2.a at page 7 of 13 of the Policy). However, an endorsement to the Policy, entitled "Exclusion of Injury to Employees, Contractors and Employees of Contractors," (hereinafter referred to as the L–500 Endorsement) provides as follows:

This insurance does not apply to:

 (i) bodily injury to any "employee" of any insured arising out of or in the course of:

 (a) Employment by any insured; or

 (b) Performing duties related to the conduct of any insured's business

 (ii) "bodily injury" to any contractor or any "employee" of any contractor arising out of or in the course of the rendering or performing services of any kind of nature whatsoever by such contractor or "employee" of such contractor for which any insured may become liable in any capacity: or

 (iii) any obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury"; or

 (iv) "bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any contractor as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

This exclusion applies to all claims and suits by any person or organization for damages because of such "bodily injury", including damages for care and loss of services. . . . This exclusion replaces the exclusion relating to "bodily injury" to "employees" and relatives of "employees" contained in the Exclusion Section of the policy to which this endorsement

is attached and the definition of "employee" in said policy.

The endorsement could not be clearer—the policy does not cover bodily injury as a result of work-related accidents, whether to employees of the named insureds or to the employees of contractors employed by the named insureds. Several courts in this District and the Eastern District of New York have had occasion to interpret this exclusion and have so held. See, *U.S. Underwriters Ins. Co. v. 614 Construc. Corp.,* 142 F.Supp.2d 491, 494–95 (S.D.N.Y.2001); *U.S. Underwriters Ins. Co. v. Roka LLC,* 2000 WL 1473607 at *4 (S.D.N.Y.2000); *U.S. Underwriters Ins. Co. v. Zabar,* 1999 WL 441472, at *3 (E.D.N.Y.1999); *U.S. Underwriters Ins. Co. v. Beckford,* 1998 WL 23754, at *3–4 (E.D.N.Y.1998). Presumably, injuries to employees (whether of the named insureds or of independent contractors working on their construction site) are to be covered under Workers' Compensation.

If this exclusion were the only provision in the policy that touched on coverage of Raimundo's injury, the case would be over.

But it is not.

A second endorsement to the Policy is entitled "Contractors'/Owners/Subcontracted Work." (hereinafter referred to the L–257 Endorsement) It provides as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Section IV—Commercial General Liability Conditions are Supplemented as follows:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for you by independent contractors unless you obtain

Certificates of Insurance from such independent contractors providing evidence of the Insurance Coverage and Limits of Liability equal to or greater than those carried by you contained in this policy, including Statutory Workers' Compensation and Employers Liability. Coverage under this policy will not change if evidence of certificates of insurance providing insurance coverage and limits of liability equal to or greater than the limits of this policy are not provided. However, in this instance, for the sole purpose of computing rates and premium, independent contractors will be considered employees of the insured and a premium charge will be made accordingly. The entire cost of all work sublet will be used as the premium bases for work performed.

Defendants contend that this endorsement operates to "change" the coverage otherwise available under the policy—by providing coverage for bodily injury to employees of independent contractors (but not employees of the named insureds)—as long as the independent contractor provides USU with certificates of insurance from the contractor showing coverage and limits of liability equal to or greater than the limits under the Policy are provided. In other words, defendants contend that this provision must be read to add coverage for employees of independent contractors upon compliance with certain conditions. Indeed, defendants argue that reading the endorsement any other way renders it a nullity.

Plaintiff—in a somewhat convoluted way—argues that the second endorsement is simply administrative and does not affect the scope of coverage afforded by the Policy.

*Relevant Law*

 Under New York law, contracts of insurance are strictly construed in favor of the insured and against the insurer. *Griffey v. New York Cent. Ins. Co.*, 100 N.Y. 417, 3 N.E. 309 (1885); *Taylor v. United States Cas. Co.*, 269 N.Y. 360, 199 N.E. 620 (1936); *151 West Associates v. Printsiples Fabric Corp.*, 61 N.Y.2d 732, 472 N.Y.S.2d 909, 460 N.E.2d 1344 (1984); *Incorporated Village of Cedarhurst v. Hanover Ins. Co.*, 160 Misc.2d 795, 611 N.Y.S.2d 417 (N.Y.Sup.Crt., 1994). Any exclusions or exemptions from policy coverage must be specific and clear in order to be enforced. *Seaboard Surety Company v. Gillette Company*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984); *Kratzenstein v. Western Assur. Co.*, 116 N.Y. 54, 22 N.E. 221 (1889); *Belt Painting Corp. v. TIG Ins. Co.*, 293 A.D.2d 206, 742 N.Y.S.2d 332 (2d Dep't 2002). Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning. *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir.1998); *International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974).

 The construction of an insurance contract is ordinarily a matter of law to be determined by the court. *Town of Harrison v. National Union Fire Insurance Co.*, 89 N.Y.2d 308, 653 N.Y.S.2d 75, 675 N.E.2d 829 (1996); *Hartford Acc. & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973) Under the principle of *contra proferentem*, if there is any ambiguity in the policy it must be construed in favor of the insured, particularly where the ambiguity surrounds exclusionary clauses. *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978); *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 357 N.Y.S.2d 705, 314 N.E.2d 37 (1974) Ambiguity arises where a term or terms might be susceptible to two or more reasonable interpreta-

tions. If a term can be reasonably interpreted in two ways, a court must construe the language in accordance with the reasonable expectations of the average insured individual, reading the policy and employing common language skills. *Goldman & Sons v. Hanover Insurance Co.*, 80 N.Y.2d 986, 592 N.Y.S.2d 645, 607 N.E.2d 792 (1992); *Mostow v. State Farm Ins. Companies*, 88 N.Y.2d 321, 645 N.Y.S.2d 421, 668 N.E.2d 392 (1996).

■ Where the court finds ambiguity in policy language, it need not empanel a jury to resolve that ambiguity if the matter can be resolved on the basis of the contract alone, without resorting to extrinsic evidence. *Hartford Accident & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 350 N.Y.S.2d 895, 305 N.E.2d 907 (1973); *Japour v. Ed Ryan & Sons Agency*, 215 A.D.2d 817, 625 N.Y.S.2d 750 (3d Dep't 1995); *Hudson–Port Ewen Assoc. v. Chien Kuo*, 165 A.D.2d 301, 566 N.Y.S.2d 774 (Div.3d Dep't 1991). Where there is a need for extrinsic evidence in order to ascertain the intent of the parties as to the meaning of the ambiguous term or terms, the matter is one for the jury and summary judgment is inappropriate. *Hartford Accident & Indem.*, 33 N.Y.2d at 172, 350 N.Y.S.2d 895, 305 N.E.2d 907.

■ When construing the terms of an insurance contract, an interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable. *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549 (2d Cir. 2000). Courts must therefore avoid construing conflicting provisions and ambiguities within a policy in such a manner as to negate certain coverages, or in ways that render coverage provisions mere surplusage. *Westview Associates v. Guaranty National Ins. Co.*, 95 N.Y.2d 334, 717 N.Y.S.2d 75, 740 N.E.2d 220 (2000).

*Conclusion of Law*

■ While the endorsement cited by Defendants is hardly a model of draftsmanship, it is not ambiguous—and it does not affect the scope of coverage under the Policy.

This policy emphatically exempts from coverage bodily injury that is or could be covered by Workers Compensation. That is the clear and unambiguous meaning of the L–500 endorsement. It is also the clear and unambiguous meaning of Section I.2.e of the Policy, which the L–500 endorsement replaces and expands upon (by excluding coverage for employees of contractors as well as for employees of the named insureds).

Turning to the L–257 endorsement, it is important to note first what it purports to do. By its terms (some of which are conspicuously omitted from defendants' description of the endorsement in their moving papers), it purports to modify Section IV of the Policy. Section IV does not define the scope of coverages and exclusions under the Policy. That is done in Section I of the Policy. Section IV sets out what are called Commercial General Liability Conditions—i.e., it specifies the conditions under which liability for a covered occurrence attaches and when it does not. For example, liability for a covered occurrence is only provided when the insured complies with certain duties, such as prompt notification and cooperation in any investigation or lawsuit. (Sec. IV.2 at page 9 of 13). Section IV also specifies what happens when the insured has other insurance for a covered occurrence—that is, when the Policy is primary and when it is excess. (Sec.IV.4.c) Section IV.5 sets forth each party's rights and duties with respect to the computation of premiums.

Section IV.8 compels the named insureds to cooperate with USU in the recovery of payments mistakenly made under the Policy.

Reading the L–257 endorsement as a modification of Section IV—which is what it purports to be—it is quite clear that the endorsement does nothing to expand the scope of coverage offered under the Policy. (It would have to modify Section I or the L–500 endorsement to do that). Rather, the endorsement provides that, in cases of bodily injury arising from a contractor's work that IS covered under the Policy— i.e., bodily injury *other than* that incurred by an employee of the contractor acting in the scope of his employment—liability will not attach unless the contractor provides evidence of its own coverage (which would of course supersede USU's coverage). This makes perfect sense, since bodily injury to employees acting within the scope of their employment is ordinarily recompensed by Workers Compensation, not by private insurance.

Defendants rely heavily on the word *not* in the sentence, "Coverage under this policy will *not* change if evidence of certificates of insurance...are not provided." They argue that this statement fairly implies its converse—that if coverage does not change if certificates of insurance are not provided, coverage must change if those certificates are provided.

Defendants might have a point if the L–257 endorsement modified Section I (Coverages) of the Policy. However, defendants' reading is not the most logical reading of an endorsement that purports to modify the Section IV General Liability Conditions, rather than the Coverages under the Policy. It makes little sense to additional condition coverage under the Policy upon a demonstration that such coverage will not be needed, because alterna-tive coverage in favor of the independent contractor and his employees exists.

Neither does that reading take into account the context in which the quoted sentence appears. The entire paragraph reads:

> Coverage under this policy will not change if evidence of certificates of insurance providing insurance coverage and limits of liability equal to or greater than the limits of this policy are not provided. However, in this instance, for the sole purpose of computing rates and premium, independent contractors will be considered employees of the insured and a premium charge will be made accordingly. The entire cost of all work sublet will be used as the premium base for the work performed.

The only reasonable and logical way to read the sentence relied on by defendants is as a part of the paragraph in which it appears. That paragraph, fairly construed, provides as follows: While the scope of coverage under the policy will not change if the contractor fails to provide the requisite certificates of insurance (including Workers Compensation for the independent contractor's employees), the method of computing premiums under the policy will change if an independent contractor fails to demonstrate that he carries his own coverage. In that event, the independent contractor will be considered an employee of the defendants, and defendants' premiums under the Policy will be recomputed accordingly, using the entire cost of all work sublet as the premium base.

This construction not only makes sense of every word in the paragraph, it is consonant with the stated purpose of the L–257 endorsement, which is to amend the General Liability Conditions (Section IV) rather than the available Coverage (Section I) under the Policy. It is impossible to make

sense of the second and third sentences of the paragraph if the first sentence means what defendants urge.

Finally, this reading of the L–257 endorsement is the only one that makes any sense in view of the L–500 endorsement. Defendants' reading renders that endorsement surplusage.

I thus conclude that the Policy does not provide coverage for the injury to Jose Raimundo Madeira. Plaintiff's motion for summary judgment is granted and defendants' cross motion is denied. Plaintiff shall submit a judgment for entry by the Court within ten days.