22-762
*LePatner v. RSUI Group*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of October, two thousand twenty-three.

PRESENT:
> JOHN M. WALKER, JR.,
> DENNY CHIN,
> BETH ROBINSON,
> > *Circuit Judges.*

─────────────────────────────────

LEPATNER AND ASSOCIATES, LLP,

> *Plaintiff-Appellant*,

> > v.                                              No. 22-762

RSUI GROUP, INC.,

> *Defendant-Appellee.*

─────────────────────────────────

FOR APPELLANT:                    CARL A. SALISBURY, Bramnick,
                                  Rodriguez, Grabas, Arnold & Mangan,
                                  LLC, Scotch Plains, NJ.

FOR APPELLEE:                     PATRICK STOLTZ (Neil A. Fox, *on the
                                  brief*), Kaufman Borgeest & Ryan LLP,
                                  Valhalla, NY.

Appeal from a judgment of the United States District Court for the

Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment entered on March 14, 2022 is

**AFFIRMED**.

Plaintiff-Appellant LePatner & Associates, LLP ("L&A"), a law firm, sued

insurer RSUI Group, Inc. ("RSUI") for, among other things, declaratory relief and

breach of contract arising from RSUI's alleged failure to provide L&A a full and

complete defense in a state court action pursuant to L&A's professional liability

insurance policy.  L&A appeals the district court's judgment in favor of RSUI

dismissing its complaint with prejudice following the district court's issuance of

a memorandum order denying L&A's motion for summary judgment and

granting RSUI summary judgment in full.  *LePatner and Assocs., LLP v. RSUI Grp.,*

*Inc.*, No. 21-cv-3890 (JSR), 2022 WL 769614, at *16 (S.D.N.Y. Mar. 14, 2022).

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.    BACKGROUND

Attorney Barry LePatner owns L&A as well as a construction management firm, LePatner Project Solutions, LLC ("LPS").  Only L&A is an insured under the "Lawyer's Professional Liability Policy" (the "Policy") issued by Landmark American Insurance Company, a wholly owned subsidiary of RSUI.[1]

In March 2017, Jamal and Julia Nusseibeh (the "Nusseibehs") filed an action in state court against L&A and LPS.  The Nusseibehs' claims arose from an alleged agreement among the Nusseibehs, L&A, and LPS pursuant to which L&A and LPS were to provide specified "construction management services," and L&A was expected to provide related legal work, in connection with a partially completed home renovation project in Connecticut.  Jt. App'x 187.  The Nusseibehs were dissatisfied with the performance of their original contractor, York Construction and Development ("York"), and alleged that LePatner had

---

[1] According to the district court, RSUI noted that L&A improperly named RSUI as the defendant in this action.  *LePatner and Assocs.*, 2022 WL 769614, at *1 n.2.  RSUI has not raised this as an issue on appeal.  Depending on the context, in this Order we refer to Landmark and RSUI interchangeably.

told them that L&A and LPS were experienced and skilled in resolving problems in construction projects, could take control of the work started by York, and could also handle all legal matters that might arise in connection with the completion of the renovation project. The parties' agreement, at least in part, was embodied in a written agreement between LPS and the Nusseibehs for "project management services" (the "LPS Agreement"). Jt. App'x 513. The LPS Agreement stated: "It is understood and agreed that this agreement pertains solely to project management services that do not include the performance of legal services. In the event that any legal services are requested, they shall be performed under separate agreement by [L&A]." *Id.* at 518. The Nusseibehs terminated the LPS Agreement four and a half months later when, they alleged, it had become apparent that LPS and L&A were not meeting their obligations.

The Nusseibehs' complaint alleged that L&A and LPS breached their contract, engaged in unfair or deceptive practices under the Connecticut Unfair Trade Practices Act (CUTPA), and were negligent. The complaint ascribed all of the allegedly actionable conduct relevant to this appeal, including the underlying agreement, to both L&A and LPS, and sought money damages against both.

4

The specific allegations of breach of contract and negligence were all based on specified failures to properly perform services described in the LPS Agreement.

Landmark, through RSUI claims specialist Katherine Dowling, agreed to provide defense and indemnity for L&A in connection with the Nusseibeh action subject to conditions and a reservation of rights. In its July 2017 coverage letter, Landmark declined to extend a defense to LPS because LPS was not a covered entity under the Policy. With respect to L&A's coverage, Landmark stated that the Policy limited coverage "to claims alleging negligence in the rendering or failure to render such professional services as a Lawyer," and that any claims in the Nusseibehs' complaint not arising from L&A's services as a Lawyer were not covered. Jt. App'x 113. Landmark reserved the right to deny coverage and a defense obligation for such claims. It also highlighted Policy exclusions for claims arising from acts of other entities sharing common facilities with an insured and claims arising out of violation of consumer protection laws.

With L&A's assent, Landmark retained attorney Jody Cappello of Winget, Spadafora & Schwartzberg, LLP ("Winget") to defend L&A against the Nusseibehs. Landmark's engagement email to Winget expressly stated that because LPS was not covered by the Policy, no "defense for [LPS]" would be

provided. LePatner independently retained Winget to represent LPS in the matter.

In the course of discovery in the underlying action, the Nusseibehs retained an architectural expert. Winget retained various engineering experts to rebut the claims and expert opinions expressed by the Nusseibehs' architectural expert. Neither side retained a legal expert.

In August 2020, Attorney Cappello informed Dowling that LePatner's position was that RSUI was required to pay expert costs and defense fees for the entire case. In the course of the ensuing email back-and-forth, Dowling emphasized,

> Any work related solely to the construction claims should have been completely separated at the outset. If there was time that applied to both the legal and construction entity, it should have been divided in ½ in the billing. As we stated at the outset, we are not footing the bill for defense of the construction entity. [LPS] engaged your firm separately to defend them in this matter. They should be billed according to that agreement. You will need to discuss that directly with Mr. LePatner, as we are not a party to the agreement.

Jt. App'x 133.

Cappello agreed and said that he had "separated the invoice [for Winget's defense fees] into those tasks that were related to defense of the legal entity [L&A] versus those related to the construction entity [LPS]." Jt. App'x 133.

Subsequently, in November 2020, Landmark's outside coverage counsel, Kaufman Borgeest & Ryan LLP ("KBR") responded to a request from L&A to pay $72,000 for expert fees relating to work performed by CED Technologies International, Inc. ("CED"). KBR asserted that the expert services in question were undertaken on behalf of LPS, and thus were not covered expenses under the Policy. KBR indicated that it would honor its February 2020 agreement, made "solely as an accommodation," to pay for 50% of CED's expert fees, because CED's expert analysis on behalf of LPS would collaterally benefit L&A. Jt. App'x 144.

In that letter, KBR also asserted an "emerging conflict of interest" between L&A and LPS, and stated that Landmark had terminated its consent to continued representation of L&A by Cappello. *Id.* Shortly thereafter when new counsel entered an appearance for L&A, LePatner emailed that lawyer demanding that he withdraw his appearance. Several days later, the lawyer withdrew and Cappello reentered his appearance on behalf of L&A; Cappello continued to represent both L&A and LPS thereafter.

L&A acknowledges in its complaint that RSUI agreed to pay 50% of "Claim Expenses," a term defined by the Policy that includes attorneys' fees and

7

certain costs. Specifically, RSUI agreed to pay half of the expenses and costs attributable to the defense of both L&A and LPS. However, with the exception of certain expert fees, RSUI declined to pay for claim expenses relating solely to the defense of LPS. In other words, RSUI agreed to allocate half of the expenses and costs to covered claims and declined to pay the other half.

In June 2021, L&A filed this action seeking in relevant part a declaratory judgment that RSUI breached its obligation to defend and indemnify L&A in full and alleging a breach of contract arising from RSUI's failure to defend and indemnify L&A for all of the legal fees and costs incurred in defending against the Nusseibehs' claims—including those expenses and costs that had been allocated by counsel to defense of the claims against LPS.[2] The district court's summary judgment decision reflects that L&A sought $168,625 in outstanding defense costs and expert fees that it alleged Landmark had declined to pay in violation of its duty to defend.

The Nusseibeh action was settled in October 2021.

---

[2] The district court dismissed as duplicative L&A's claim for breach of the duty of good faith and fair dealing, *LePatner and Assocs., LLP v. RSUI Grp., Inc.*, 2021 WL 4555761 (S.D.N.Y. Oct. 4, 2021). L&A's claim that RSUI breached its duty to indemnify L&A under the Policy was resolved prior to the district court's summary judgment ruling. Neither of those claims is before us in this appeal.

8

Following discovery and briefing, the district court denied L&A's motion for summary judgment and granted summary judgment to RSUI. The court first considered whether RSUI is obligated to pay for LPS's defense costs, *LePatner and Assocs.*, 2022 WL 769614, at * 6, concluding that it is not. The court recognized that New York law requires an insurer to defend against all claims alleged in the complaint, "even those that appear not to be covered or potentially meritless." *Id*. at 7. But it concluded that none of the cases L&A relied upon suggests that "the duty to defend requires an insurer to defend a non-insured against non-covered claims, even if they are part of the same lawsuit." *Id.*

The court reasoned that even though the Nusseibehs' complaint in the underlying lawsuit was directed against both L&A and LPS, the claims for fees and costs arose principally from the construction and project management services. Most of the allegations underlying the breach of contract, CUTPA, and negligence counts concerned failures *by LPS* to fulfill its obligations under the LPS Agreement. The CUTPA count was not covered pursuant to a Policy exclusion of claims arising out of an alleged violation of consumer protections laws. Because i) the complaint's allegations were largely directed at LPS, ii) LPS and L&A are distinct entities, and iii) only L&A is covered by the Policy,

9

Landmark was not obligated to pay *all* the expenses and costs of defending the Nusseibeh suit.

Moreover, the district court reasoned that the L&A Policy covered only liability incurred in providing *legal* services, and the Nusseibehs' complaint largely related to construction and project management services that did not fall within the scope of coverage under the Policy. In addition, two other Policy exclusions precluded coverage for acts by a non-insured entity in LPS's position.

Finally, the court rejected L&A's argument that RSUI wrongly interfered with L&A's defense by, among other things, failing to affirmatively inform L&A that it had a right to retain independent counsel, trying to appoint separate counsel in December 2020, and directing L&A's counsel to communicate with Landmark's coverage counsel. The court rejected the suggestion that Landmark's conduct was wrongful, but also concluded that L&A had not shown that it suffered any harm to its defense as a result of the various cited acts.

## II.   DISCUSSION

On appeal, L&A emphasizes that "New York law does not permit an insurer to compel its insured to share in the defense of an underlying action when at least one of the claims in the action is potentially covered." L&A argues

that the Nusseibehs' complaint expressly alleged that *L&A*, as well as LPS, breached various obligations and engaged in various negligent or unfair acts in implementing their agreements with the Nusseibehs. In L&A's view, these allegations were sufficient to trigger Landmark's duty to defend L&A, and the district court erred in concluding that Landmark's duty to defend did not require the payment of all the costs and expenses of defending the Nusseibeh suit, including those claims arising from construction and project management services. In addition, L&A argues that the district court applied an unreasonably narrow definition of "professional services" under the Policy and reiterates that RSUI interfered with L&A's representation.

We review a district court's grant of summary judgment without deference, viewing the facts in the light most favorable to the non-moving party. *Pilgrim v. Luther*, 571 F.3d 201, 204 (2d Cir. 2009). We apply the "same standard as the district court: summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998); Fed. R. Civ. P. 56(a). And we may affirm the district

court's determination based on any ground supported in the record. *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 49 (2d Cir. 2010).

Under New York law, an insurer's duty to defend arises when the allegations in the complaint state a cause of action that gives rise to a reasonable possibility of recovery under the policy. *See Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648, 609 N.E.2d 506 (1993); *Colon v. Aetna Life & Cas. Ins. Co.*, 66 N.Y.2d 6, 8 (1985). This generally means an insurer's duty to defend is broader than its duty to indemnify. *See Goldberg v. Lumber Mutual Casualty Ins. Co.*, 297 N.Y. 148, 154, 177 N.E.2d 131 (1948). Any ambiguity in the policy "must be resolved in favor of the insured and against the insurer." *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 95 N.Y. 2d 334, 340 (2000).

To determine whether the insurer has a duty to defend, courts compare the allegations of the complaint with the language of the insurance policy. *See, e.g.*, *IBM Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004). The duty to defend generally applies if the pleadings allege a covered occurrence, "even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered." *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991).

We conclude, based on the four corners of the complaint and the language of the Policy, that RSUI was under no duty to defend LPS because the Policy covers only professional services provided *as a lawyer*, and the Nusseibehs' complaint alleges no claim against L&A (or LPS) falling within that scope of coverage.

The Policy provided liability coverage to L&A for "Damages and associated Claim Expenses arising out of a negligent act, error, [or] omission . . . in the rendering of or failure to render Professional Services as a Lawyer . . . ." Jt. App'x 800. The Policy defines "Professional Services" to mean "only services performed for others by an Insured such as an escrow agent, lawyer, notary public, administrator, conservator, executor, guardian, guardian ad litem, arbitrator, mediator, trustee, and title insurance agent." *Id.* at 805. The Policy creates an obligation "to defend any Claim against an Insured seeking Damages to which this Policy applies, even if any of the allegations of the Claim are groundless, false[,] or fraudulent." *Id.* at 800.

We accept for purposes of the duty-to-defend analysis that the Nusseibehs' complaint alleges that *L&A*, as well as LPS, breached various duties in the course of implementing the alleged Agreement with the Nusseibehs—even though L&A

13

was not a party to the written LPS Agreement.  Still, we have not identified any allegations in the complaint that fall within the scope of coverage under the Policy.  As the district court recognized, insofar as Count II alleges a claim under CUTPA, claims within that count are excluded from the Policy pursuant to an endorsement that expressly excludes coverage for claims "arising directly, or indirectly, out of any actual or alleged violation of consumer protection laws . . . ."  *Id.* at 816.

Counts I and III, respectively alleging breach of contract and negligence, rest on the same allegations: that L&A and LPS failed to fulfill their obligations "under the LPS Agreement."  None of the claims specified in Counts I and III implicates professional *legal* services provided by L&A.  This is clear from the complaint itself.  The complaint invokes L&A's and LPS's duties *under the LPS Agreement* in connection with each alleged act or omission supporting the Nusseibehs' claims.  And the LPS agreement, attached to and incorporated into the Nusseibehs' complaint, notes that it "pertains solely to project management services that *do not include the performance of legal services*."  *Id.* at 518 (emphasis added).

Because L&A's alleged breaches of duty under the Nusseibehs' complaint involve only acts or omissions under the LPS Agreement, which by definition are non-legal and therefore fall outside the scope of L&A's coverage under the Policy, Landmark was not obliged to pay legal and expert expenses associated with defense of those claims. We thus affirm the district court's judgment for RSUI on L&A's duty-to-defend claim.

We likewise affirm the district court's judgment for RSUI with respect to L&A's allegations that Landmark interfered with L&A's defense in various ways. Landmark's insistence that L&A's defense counsel not include services for LPS in its bills was not improper in light of the above analysis. Any conflict in L&A's representation—and we do not conclude that one existed—arose not from Landmark's reservation of rights but from LPS's decision to independently retain the same lawyer that represented L&A pursuant to the Policy. L&A cites no authority for the suggestion that KBR, Landmark's coverage counsel, could not properly ask Attorney Cappello to communicate with KBR rather than directly with its client Landmark in order to share information about the Nusseibeh case (other than privileged information that might be adverse to coverage). And, like the district court, we see no evidence of harm from any claimed interference.

Landmark sought to substitute its own chosen counsel to conduct L&A's defense, but after L&A protested, it changed course within days. And L&A not only assented to representation by Attorney Cappello; it chose to continue that representation even after Landmark said it would seek alternate counsel for L&A.

* * *

We have considered L&A's remaining arguments and conclude that they are without merit. The district court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

16